# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| ALBERT G. HILL III, and ERIN NANCE HILL, <br> Plaintiffs, <br><br> vs. <br><br> The ESTATE of ALBERT G. HILL, JR.; MARGARET KELIHER; TYREE B. MILLER; LYDA HILL; HEATHER HILL WASHBURNE; ELISA HILL SUMMERS; CHESTER J. DONNALLY, JR.; The ESTATE of IVAN IRWIN, JR.; CAROL E. IRWIN; THOMAS P. TATHAM <br> Defendants. | Civil Action No. |

## COMPLAINT

Plaintiffs, **ALBERT G. HILL, III,** and **ERIN NANCE HILL**, by their attorneys, The Skepnek Law Firm and Lathrop GPM LLP, hereby allege as follows:

## INTRODUCTION

## THIS CASE

Al Hill III's father, his aunt, and his two sisters have broken family Trusts this Court placed under their control to loot hundreds of millions in assets in which Plaintiff and his three children have vested and contractual rights. The father, aunt, and sisters were aided in this by Trustees and Trust Advisory Board Members who, though court-appointed to oversee and protect these very rights, have nonetheless succumbed to inducements to ignore and breach obvious fiduciary duties.

This case is filed in this Court because this controversy, and the claims asserted in this case, arise from the Global Settlement Agreement ("the GSA") (Civil Action No. 3:07-CV-02020, Doc. 879) and the Final Judgment approving that agreement entered as Doc. 999 in that action, captioned *Albert G. Hill III v. Tom Hunt, et. al.* ("the Prior Case"). Pursuant to a forum selection

clause in the Final Judgment[1] this Court accepted the parties' agreement[2] that the Court would retain continuing jurisdiction to implement the GSA. The Final Judgment provided that "any controversy or claim arising after the date of execution of the Agreement [May 13, 2010] and arising out of the Agreement or the Documentation ***shall*** be resolved by this Court." [Emphasis Added.][3]

The claims here asserted arise from Defendants' termination of certain trust documents created pursuant to the GSA, identified as the New Hunt Trusts. The parties agreed that these Trusts would be formed out of the trusts H.L. Hunt had created in 1935 for his daughter Margaret (MHTE) and his son Hassie (HHTE).  Thus, the New Hunt Trusts were brought into existence by the Final Judgment. The parties agreed that "the rights of each beneficiary of each of the New Hunt Trusts shall be governed by the terms and provisions of the Articles of Agreement and Declaration of Trust establishing the: MHTE and the HHTE."[4]

The "principal purpose" for creation of these New Hunt Trusts, was to "settle finally and forever all disputes" among the parties.[5] The claims now being made in this case arose on December 13, 2016 when Defendants terminated and dissolved certain of these New Hunt Trusts that relate to the interests of Albert G. Hill, Jr. and his three children, Al III/Heather/Elisa, and Hill Jr.'s sister, Lyda Hill. These include the MHTE-Albert G. Hill, Jr. Trust; the HLHTE-Albert G. Hill, Jr. Trust; the MHTE – Lyda Hill Trust; and the HLHTE – Lyda Hill Trust.[6]

Beginning in early 2016, secretly and unilaterally, Defendants worked together to terminate these New Hunt Trusts and take possession of trust assets, a decade and more prior to the Trusts'

---

[1] Doc. 999, ¶45.
[2] Doc. 879, ¶5(c).
[3] Doc. 999, ¶45.
[4] Doc. 879, ¶ 5(h)(i).
[5] Doc. 879, ¶5 (j).
[6] Doc. 879, ¶5 (h); Doc. 999, ¶¶ 8, 9.

lawful termination dates.  Hill III and Erin Hill first learned that Defendants had terminated these New Hunt Trusts that the Court had created in the Final Judgment with the filing of Doc. 1857-3 in the Prior Case on May 15, 2018.

In the GSA the parties made explicit their agreement that: "Any controversy or claim arising after the date of execution of this Agreement arising out of this Agreement and the Documentation shall be resolved by the Federal Court, the Honorable Reed O'Connor, who shall retain continuing jurisdiction over this Agreement."[7]  Their agreement gives Hill III (and every other party) the right to bring any action for any breach of the GSA to this Court where the parties agreed that an aggrieved party could "seek any legal or equitable remedy that may be available for such breach."[8]  These are such claims.

## THE PRIOR CASE
### (3:07-cv-02020)

On June 14, 2007, when Albert Hill III's grandmother, Margaret Hunt Hill, died, Hill III together with his sisters, Heather Washburne and Elisa Summers, became vested beneficiaries of the Trust that had been set-up for Margaret by her father, their great-grandfather, H.L. Hunt, in 1935.  This was so because their father, Al Hill Jr., two years prior to Margaret's death, on March 22, 2005, had executed a written disclaimer in their favor of 75% of his income interest, and 90% of his termination interest in Margaret's Trust.  Margaret's passing meant that the lion's share of Margaret's income and termination interests in her Trust bypassed Al Hill, Jr., and passed directly to Al III, Heather, and Elisa.  Thus, on June 14, 2007, Al Hill, Jr.'s three children, Al III, Heather, and Elisa became vested, immediately, as income beneficiaries, and if they live to June 14, 2028,

---

[7] Doc. 879, ¶5 (c).
[8] Doc. 879, ¶5 (r).

they will be entitled to a termination share when Margaret's Trust is dissolved as pre-ordained by the terms of the Trust on the 21st anniversary of Margaret's death.

In 2007 Hill III was 37 years old and married to Erin Hill, with three children, Hill IV, Nance, and Caroline. It was well understood by members of the family that Margaret's Trust was extremely valuable. Upon Margaret's death, Hill III received information from Al Hill Jr. indicating that Margaret's Trust was worth well in excess of $1 Billion, and that Hill III's interest in the Trust (*and the interest of his children*) was worth in the hundreds of millions of dollars.[9] As an adult, a parent with responsibility to his own children, with a present vested interest in Margaret's Trust, Hill III began asserting his right to know what was in the Trust and how the Trust was being managed. He believed it was his responsibility, as a vested beneficiary, to assure that his interests and the interests of his three children were being furthered and protected.

But his father, Hill Jr., immediately resented Hill III's actions, which he considered interference with Hill Jr.'s management of the Trust. Taking umbrage, he cut Hill III off from access to family resources. Realizing that by executing the Disclaimer he had given up the power to control his children, Hill Jr. tried to take it back, denying that his 2005 Disclaimer was valid, saying he had been mentally impaired on March 22, 2005 when he had executed the disclaimer.

Hill III brought the Prior Case in 2007 to vindicate his rights in Margaret's Trust. In that case Hill III also claimed an interest in the Trust his great-grandfather had created for his grand-uncle, H.L. Hunt, Jr., Hassie, who had died on April 20, 2005. Because Hassie had died childless, under its terms, Hassie's Trust would go to Margaret's line of descent, including Hill III, and would terminate twenty-one years after Hassie's death, on April 20, 2026.

---

[9] Attached as **Exhibit A**, July 20, 2007 Fax from Al Jr. to Hill III.

After three years of litigation, in 2010, this Court discovered that Hill Jr. had not been telling the truth. Hill Jr. had not, in fact, been incompetent when he had executed the Disclaimer, and he had altered documents and fabricated evidence in his effort to invalidate Hill III's claims. Getting caught in this lie brought about a quick settlement of the Prior Case, a settlement that recognized Hill III's vested interest in both Margaret's Trust and Hassie's Trust.[10] [11]

The centerpiece of the settlement, the GSA, was the agreement to resolve claims among family members concerning rights to the Trusts for Margaret and Hassie. (The "MHTE" and "HHTE" Trusts.) In the Final Judgment this Court accepted the GSA resolution. (*See* Case No. 07-CV-02020, Doc. 999). A core purpose of the GSA, and the Final Judgment, *inter alia*, was to establish and protect Hill III's interests, and those of his children in Margaret's and Hassie's Trusts from the date of entry of the Final Judgment (November 8, 2010) until the dates on which the HHTE and MHTE Trusts would terminate, on April 20, 2026 and June 14, 2028, respectively. The GSA and the Final Judgment were intended to establish and govern the rights of the Hill family in relation to these Trusts during the eighteen years that would elapse between execution of the GSA and the ultimate termination of the New Hunt Trusts.[12]

Notwithstanding the GSA, six years after entry of the Final Judgment, on December 13, 2016, Defendants exercised their control over the New Hunt Trusts to violate their terms, the GSA, and the Final Judgment, breaching their contract with Plaintiffs. They did so by unilaterally terminating and dissolving New Hunt Trusts created by the Final Judgment without notice to Plaintiff or approval from this Court-and after having been twice denied permission to terminate

---

[10] *See*, Order Finding Albert G. Hill, Jr. Submitted Summary Judgment Materials to the Court in Bad Faith and Testified Falsely at the January Hearing (Prior Case, Civil Action No. 3:07-CV-02020, Doc. #541.)

[11] After the GSA had been signed Hill Jr., retaliated against Hill III for proving the "lie" and forcing him into settlement by pushing the Dallas County DA to indict Hill III on trumped up criminal charges. Those criminal charges, which were finally dismissed over eight and a half years later, on October 26, 2018, are the subject of *Hill v. County of Dallas*, Civil Action No. 3:20-cv-3250 which is currently pending in this Court.

[12] Doc. 879, ¶5(j).

by a state probate court. Specifically, Defendants terminated and dissolved the MHTE-Albert G. Hill, Jr. Trust; the HLHTE-Albert G. Hill, Jr. Trust; the MHTE – Lyda Hill Trust; and the HLHTE – Lyda Hill Trust, long in advance of the termination dates for those Trusts.[13]  Defendants then secretly distributed to themselves Trust assets in which Hill III and his children had vested and equitable claims.  They did so without the knowledge or consent of Hill III or his children in violation of the GSA.  These actions were taken jointly by Hill III's father, Hill Jr., his aunt Lyda Hill, and his sisters Heather and Elisa for the purpose of converting to themselves from Hill III, Erin Hill, and their children the inheritance from Hill III's great-grandfather, H.L. Hunt, that had been contractually acknowledged by the GSA and enforced in the Final Judgment. These breaches of contract by Hill Jr., Lyda, Heather, and Elisa were facilitated and made possible by breaches of fiduciary duty by Trustees and Advisory Board Members whose duties had been established by the New Hunt Trusts in the Final Judgment.

## JURISDICTION AND VENUE

1.     This court has subject matter jurisdiction of this action under 28 U.S.C. § 1332 because there is complete diversity jurisdiction between the parties.  The Court also has jurisdiction over this case as necessary to protect and effectuate a prior Judgment entered by this Court.

2.     This Court has personal jurisdiction over all Defendants because they reside in Texas and/or transact business in the State of Texas, and through the GSA and the Final Judgment in the Prior Case Defendants have agreed to submit to the personal jurisdiction of this Court such that this Court's exercise of personal jurisdiction over the Defendants is consistent with all applicable statutory requirements and constitutional guarantees.

---

[13] Doc. 879, ¶5(h); Doc. 999, ¶¶ 8, 9.

6

3.    Venue is proper under 28 U.S.C. § 1391(b) and (c).  On information and belief, all Defendants in this action reside in Dallas County, Texas, and the events giving rise to the claims asserted in this complaint all occurred within this District, and through the GSA and the Final Judgment in the Prior Case Defendants have stipulated to venue in this Court.

## THE PARTIES

4.    Albert G. Hill III ("Hill III") is a Plaintiff in this case and was the Plaintiff in the Prior Case. Hill III was a party to the GSA, who signed for himself individually, and "derivatively on behalf of the MHTE and the HHTE", and also with his wife Erin, "as next friends, and on behalf of Albert Galatyn Hill IV, Nance Haroldson Hill and Caroline Margaret Hill"[14] who were also parties to the GSA.   He brings this action in contract, tort, and equity in all of those capacities. Hill III is a resident and a citizen of the State of Georgia, and the husband of Erin Hill, who with him are the parents of Albert Galatyn Hill IV, Nance Haroldson Hill and Caroline Margaret Hill.

5.    Erin Nance Hill ("Erin") is a Plaintiff in this case and was a party to the GSA for whom the GSA was signed individually, and together with her husband Hill III "on behalf of her children Albert Galatyn Hill IV, Nance Haroldson Hill and Caroline Margaret Hill."[15]   As a party to the GSA she brings this action in contract, tort, and equity in those capacities. Erin is a resident and a citizen of the State of Georgia, and the wife of Al Hill III who are the parents of Albert Galatyn Hill IV, Nance Haroldson Hill and Caroline Margaret Hill.

6.    Defendant Margaret Keliher (Keliher") upon information and belief, is being sued individually as a breaching party to the GSA, for her tortious conduct, and in her capacity as Executor of the Estate of Albert G. Hill, Jr. (the "Estate").  The Estate is the successor-in-interest to Al Hill III's father, Albert G. Hill, Jr. ("Al Hill, Jr.").  Keliher is a resident and citizen of the

---

[14] Doc. 879, p. 28.
[15] Doc. 879, p. 28.

State of Texas.  Keliher may be served with process at her residence, 4219 Fairfax Avenue, Dallas, Texas 75205, in Dallas County, Texas, or at her office, 47 Highland Park Village, Suite 200, Dallas, Texas 75205.  The Estate is a party to this action because trust property from the wrongful termination of the Trusts is likely held in, or is payable to, the Estate.

7.     Defendant Tyree B. Miller ("Miller") upon information and belief is being sued individually as a breaching additional party to the GSA, for his tortious conduct, and is being sued in his capacity as Trustee of The Al G. Hill, Jr. Family Trust, dated December 20, 2014 (the "Family Trust").  The Family Trust is a party to this action because trust property from the wrongful termination of the Trusts may be held in, or payable to, the Family Trust.  Miller is a resident and citizen of the State of Texas.  Miller may be served with process at his residence, 5930 Lupton Drive, Dallas, Texas 75225, or at his office, 47 Highland Park Village, Suite 201, Dallas, Texas 75205, in Dallas County, Texas.

8.     Lyda Hill is a party to the GSA, an aunt of Hill III, and is being sued individually as a breaching party of the GSA, and for her tortious conduct, and is a party to this action because trust property from the wrongful termination of the Trusts is likely held in, or is payable to, a Trust for which she is the Trustee. Lyda Hill is a resident and citizen of the State of Texas and may be served with process at 3505 Turtle Creek Blvd., #15B, Dallas, Texas 75219, or at 2001 Ross Ave., Suite 4600, Dallas, Texas 75201, in Dallas County, Texas.

9.     Defendant Heather Hill Washburne ("Washburne") is a party to the GSA and being sued individually as a breaching party to the GSA, and for her other tortious conduct, as well as in her capacity (on information and belief) as Co-Trustee of The Al G. Hill, Jr. Charitable Lead Annuity Trust (the "CLAT"), created under the Family Trust upon the belief that assets from the terminated New Hunt Trusts have been transferred into her possession as Trustee.  She is also

being sued in her capacity as Advisory Board Member for the MHTE – Albert G. Hill, Jr. Income Beneficiary/Elisa Termination Beneficiary Trust. Washburne is a resident and citizen of the State of Texas.  Washburne may be served with process at her residence, 3809 Gillon Ave., Dallas, Texas 75205, in Dallas County, Texas.

10.    Defendant Elisa Hill Summers ("Summers") is a party to the GSA and being sued individually as a breaching party to the GSA, and for her other tortious conduct, as well as in her capacity (on information and belief) as Co-Trustee of the CLAT upon the belief that assets from the terminated New Hunt Trusts have been transferred into her possession as Trustee.  She is also being sued in her capacity as Advisory Board Member for the MHTE – Albert G. Hill, Jr. Income Beneficiary/Heather Termination Beneficiary Trust.  Summers is a resident and citizen of the State of Texas.  Summers may be served with process at her residence, 3805 Stanford Ave., Dallas, Texas 75205, in Dallas County, Texas.

11.    Chester J. Donnally, Jr. is a party to the GSA and is being sued individually for his breach of fiduciary duty and his tortious conduct, as well as in his capacity as the court appointed Trustee for the MHTE-Albert G. Hill, Jr. Trust and the HLHTE-Albert G. Hill, Jr. Trust.  Donnally is a resident and citizen of the State of Texas.  Donnally may be served with process at 100 Crescent Court, Suite 600, Dallas, Texas 75201, or at 3417 St. Johns Drive, Highland Park, Texas 75205.

12.    Ivan Irwin, Jr., is now deceased, was a party to the GSA and his estate is being sued for his individual conduct as a breaching party to the GSA, and for other tortious conduct, as well as in his capacity as an advisory board member for the MHTE-Albert G. Hill, Jr. Trust and the HLHTE-Albert G. Hill, Jr. Trust for his breach of fiduciary duty.

13.    Carol E. Irwin is being sued in her capacity as Personal Representative and Independent Executor of the Estate of Ivan Irwin, Jr., Deceased. Carol E. Irwin is a resident and

citizen of the State of Texas. She may be served with process at 4212 Fairfax Avenue, Dallas, Texas 75205. The Estate is the successor-in-interest to Ivan Irwin ("Irwin").

14.     Thomas P. Tatham ("Tatham") is being sued individually for his tortious conduct, as well as in his capacity as an advisory board member for the MHTE-Albert G. Hill, Jr. Trust and the HLHTE-Albert G. Hill, Jr. Trust for his breach of fiduciary duty.  Tatham is a resident and citizen of the State of Texas.  Tatham may be served with process at 4400 Post Oak Parkway, Houston, Harris County, Texas 77027.

## FACTS

15.     Margaret Hunt Hill ("Margaret") died on June 14, 2007.  That made Al Hill III, the eldest great-grandson of former Texas oil magnate H.L. Hunt, together with his two sisters, Heather and Elisa, current and potential beneficiaries of a Trust that had been created in 1935 by their great-grandfather.   This was due to a Disclaimer of interest that operated to by-pass their father, Al Hill Jr., that Hill Jr. had executed approximately two years before.[16]

16.     Al Hill III thereafter became embroiled in several civil cases in Texas state court and federal court against Al Hill, Jr., other family members and trustees regarding, *inter alia*, Hill III's rights in Margaret's Trust.  Among those cases was a federal civil RICO action, filed by Al Hill III, in the United States District Court for the Northern District of Texas.

17.     The litigation between Al Hill III and his family was very contentious and the relationship between Hill III and his father, Al Hill, Jr., was especially toxic.  Hill, Jr. had substantial financial and personal interests in denying Hill III's claims and did everything within his considerable power to ensure that Hill III would receive as little as possible from Margaret's estate.  Hill III's sisters, Heather Washburne and Elisa Summers—had substantial financial

---

[16] Doc. 879, ¶1(g), ¶2(a), Exhibit C; Doc. 999, ¶5; Doc. 999-1, Exhibit 3.

incentives cooperate with Hill Jr. in his efforts to minimize Hill III's portion of Margaret's Trust while currying favor with Hill Jr.  Hill III's aunt, Lyda Hill, who has no cognizable heirs to succeed her should she predecease the 2028 terminal date of Margaret's Trust ("MHTE"), and the 2026 terminal date of the Trust of her uncle Hassie ("HHTE"), also had a substantial incentive to cooperate with her brother, Hill Jr., in his efforts to dispossess Hill III of his vested interest in Margaret's Trust and his remainder interest in Hassie's Trust.

18.    After three years of litigation, in 2010, this Court discovered that the centerpiece of Hill Jr.'s purported defense to Hill III's claims, that Hill Jr. was incompetent when he executed a disclaimer, was based upon falsified evidence. This court found that Hill Jr. had altered documents and fabricated evidence in his effort to invalidate Hill III's claims.[17]  This court's finding of evidence fabrication led to the GSA which acknowledged Hill III's vested interest as a current and potential beneficiary of Margaret's trust.

19.    On May 13, 2010 the Al Hill III and Erin entered into a Global Settlement Agreement ("GSA") which recognized Hill III's standing both as a "current" and a "potential" beneficiary of the Margaret and Hassie Trusts.  Hill Jr., Lyda Hill, Hill III, Erin Hill, Hill IV, Nance Haroldson Hill, Caroline Margaret Hill, Keliher, Irwin, Washburne, and Summers were all parties to the GSA. Tyree Miller was listed in the GSA as an additional party, as were affiliate entities of Lyda Hill, MHTE and HHTE.[18] The GSA acknowledged that, in signing the GSA, Al III was "also acting derivatively on behalf of the MHTE and the HHTE."  The GSA acknowledged that "Al III and Erin are acting as next friends, and on behalf of their children, the lineal descendants of Hill III, who

---

[17] *See*, Order Finding Albert G. Hill, Jr. Submitted Summary Judgment Materials to the Court in Bad Faith and Testified Falsely at the January Hearing (Prior Case, Civil Action No. 3:07-CV-02020, Doc. #541.)
[18] Doc. 879, pp. 1-5.

are Albert Galatyn Hill IV, Nance Haroldson Hill and Caroline Margaret Hill (collectively, the "Grandchildren")."[19]

20.    On November 8, 2010, the Northern District of Texas, after reviewing the GSA, issued a Final Judgment that accepted and implemented the GSA.[20]  The Final Judgment created, among other things, the MHTE—Albert G. Hill, Jr. Trust, and the HLHTE—Albert G. Hill, Jr. Trust (which are among the "Final Judgment New Hunt Trusts", "New Hunt Trusts", or "Trusts").[21]  These Trusts were created under, and to be governed by the same terms as, the Margaret Hunt Trust Estate dated December 28, 1935 (the "MHTE"), and the Haroldson ("Hassie") L. Hunt, Jr. Trust Estate dated December 28, 1935 (the "HHTE").[22]

21.    This Court appointed a guardian-ad-litem for Hill III's children, who were then minors, and recognized as future beneficiaries of Margaret's and Hassie's Trusts (MHTE & HHTE). The guardian-ad-litem approved the agreement Hill III and his wife Erin had made to the GSA on May 13, 2010[23] on behalf of their minor children. [24]

22.    The Final Judgment accepted and approved the Parties agreement, as set forth in the GSA, a key provision of which was a finding that Hill Jr.'s March 22, 2005 disclaimer[25], the "Disclaimer," was "valid, enforceable, and shall be given full force and effect."[26]

23.    In the Final Judgment this Court approved the agreement that, as a result of the Disclaimer, Hill III and his sisters, Heather and Elisa, had become vested both as "current" and

---

[19] Doc. 879, p. 2, ¶F.
[20] Doc. 999, ¶1.
[21] Doc. 999, ¶¶ 8, 9.
[22] Doc. 879, ¶5(h); Doc. 999, ¶14.
[23] Doc. 879, p. 28.
[24] Doc. 999, ¶3.
[25] Doc. 879, ¶3(a), Exhibit C; Doc. 999-1, Exhibit 3.
[26] Doc. 999, ¶5.

"potential" beneficiaries of 75% of the income interest and 90% termination interest in the New Hunt Trusts.[27]

24.    The GSA was a family peace accord, creating contractual obligations between and among its signatories, identified therein as "Agreeing Parties" and "Additional Parties"[28], the essential purpose of which was to stipulate concerning the relationship of the parties to each other in the context of two trusts created by H.L. Hunt for his children, Margaret and Hassie, and converted by the GSA and the Final Judgment into the New Hunt Trusts.  The Parties expressed a "desire to resolve and amicably settle the Litigation in all respects."[29] Thus, the Final Judgment was intended to govern the conduct of the signatories to the GSA during the roughly eighteen (18) years that would elapse between the date of the GSA (May 13, 2010), and the date on which Margaret's Trust (MHTE) would terminate (June 14, 2028).

25.    The Parties to the GSA agreed to: "(a) affirm the validity of Al Jr.'s Disclaimer (as defined below); (b) declare the beneficiaries of the MHTE and the HHTE; (c) divide the MHTE and HHTE into separate trusts for each current beneficiary in proportion to his or her beneficial ownership (the New Hunt Trusts - as described in detail below)."[30]

26.    In return for the declaration and recognition of his rights as a beneficiary of the Margaret and Hassie Trusts, Hill III agreed to dismiss his lawsuit, and agreed he would not contest Hill Jr.'s Will.[31]

27.    Al Jr. acknowledged that Hill III's rights in the Trusts resulted from the Disclaimer, reciting:

> Al Jr. acknowledges that the Disclaimer is valid and enforceable and shall
> be given full force and effect with the result that Al III, Heather, and Elisa

---

[27] Doc. 999, ¶ 8(f), page 11.
[28] Doc. 879, p. 5, Recitals; Doc. 999, ¶2.
[29] Doc. 879, p. 5, Recitals.
[30] Doc. 879, p. 7.
[31] Doc. 879, ¶1(c), p. 8; ¶1(f), p.15.

each shall receive his or her pro rata share of all interests as set forth in the Disclaimer as of the time of Margaret Hunt Hill's death. As a result, Al III shall be entitled to be the beneficiary of his share of the corpus of the MHTE assets and shall receive 25% of Al Jr.'s interest in distributions from the MHTE…[32]

28.    The Agreeing Parties agreed that the only avenue of dispute available to them after signing the GSA would be to an action to enforce it in Federal Court for the Northern District of Texas:

> **Covenant Not to Sue Parties**: Each of the Agreeing Parties agrees and covenants not to bring or assert any released Claims (in law or in equity), and claims brought to enforce this Agreement may only be brought in this Federal Court.[33]

29.    They agreed that they would:

> [J]ointly request that the Federal Court, the Honorable Reed O'Connor, enter an Agreed Final Judgment in the Federal Suit providing that the MHTE and the HHTE shall be divided into separate trusts (the "New Hunt Trusts") for each beneficiary in proportion to his or her beneficial ownership…"[34]

> And

> Agreeing Parties shall jointly request that the court approve the designations of who shall serve as trustee and advisory board members of each of the New Hunt Trusts, except that the current trustees and advisory board members of the MHTE and the HHTE shall have no responsibility and no liability for the appointment of new trustees and advisory board members for each of the New Hunt Trusts.[35]

> And

> **Irrevocable Agreement**: The Agreeing Parties agree that this is a totally binding Agreement that may not be altered by any Party without the written consent of all other Parties and will be in effect for all times, unless otherwise provided herein.[36]

---

[32] Doc. 879, p. 15.
[33] Doc. 879, p. 21.
[34] Doc. 879, p. 23.
[35] Doc. 879, p. 24.
[36] Doc. 879, p. 25.

30.     The parties to the GSA agreed to give each other all available legal equitable remedies for any breach of the agreement, and to enforce the agreement, including recovery of their attorneys' fees and litigation costs.

> **Specific Performance**: The Parties agree that monetary damages alone may not be adequate recompense for any breach of this Agreement. In the event any Party breaches any of the obligations or responsibilities placed upon such Party in this Agreement, then any other Party may seek any legal or equitable remedy that may be available for such breach, and, if such Party is successful, then the Party breaching this Agreement agrees to pay all of the other Parties' reasonable attorneys' fees and costs of litigation in addition to any legal or equitable damages. The Parties agree that the remedy of specific performance and/or injunctive relief (whether mandatory or by restraint) shall be available for the breach of any term, condition, covenant, or warranty of this Agreement.[37]

31.     As had been the case for the HHTE and MHTE, Trustees of the Final Judgment New Hunt Trusts were empowered <u>only</u> to make annual distributions of profits of the respective Trusts, the beneficiary was <u>only</u> entitled to receive discretionary distributions from the Final Judgment New Hunt Trusts, the beneficiary had <u>no rights</u> to demand distributions of corpus or to call for dissolution, and the corpus of the Final Judgment New Hunt Trusts was to <u>"remain intact and undisturbed" until 21 years after the death</u> of their initial named beneficiary, Hassie and Margaret, respectively.   <u>Only then, upon termination pursuant to the express terms of the trusts, would the corpus be distributed to the then current beneficiaries</u>.[38]

32.     Hassie had passed away on April 20, 2005, so the HHTE, and any Final Judgment New Hunt Trusts created from it, were to "remain intact and undisturbed" until April 20, 2026.

---

[37] Doc. 879, ¶5(r),  p. 27-28.
[38] Doc. 999, ¶14; attached as **Exhibits B & C** - Articles of Agreement and of Declaration of Trust of Margaret Hunt Trust Estate (MHTE); Articles of Agreement and of Declaration of Trust of Haroldson L. Hunt, Jr. Trust Estate (HHTE), at Art. III § 2.

Margaret had passed away on June 14, 2007, so the MHTE any Final Judgment New Hunt Trusts created from it, were to "remain intact and undisturbed" until June 14, 2028.

33.    The relevant provisions of the HHTE and the MHTE are identical except for the beneficiary name and related pronouns. Therefore, The Final Judgment New Hunt Trusts, provide:

ARTICLE III. BENEFICIARY

SECTION 1:  **The beneficiary shall have no right to the corpus of the Trust property**, whether real, personal or mixed, **nor shall she:  have a right to call for a partition or division of the same or dissolution of the trust**, and the Beneficiary shall have no right with respect to said Trust **other than to receive distribution of net earnings awarded her by the Trustee** with consent of the Advisory Board, as is elsewhere herein provided, and the right of distribution of said Trust Estate made by the Trustee at the termination of the trust hereby created, whether at the expiration of the period fixed for its existence or by voluntary dissolution, it being fully understood and agreed that absolute control, dominion over, and the right to dispose of said property, income, revenue and proceeds thereof, so held in Trust by said Trustee is hereby vested in said Trustee and his successors, subject only to the express provisions hereof, during the period of his trusteeship, as herein defined.

SECTION 2:  **The death,** insolvency or bankruptcy **of the Beneficiary** hereunder, or the transfer of her interest in any manner, or by descent or otherwise, during the continuance of this Trust, **shall not operate as a dissolution of, nor terminate this Trust**, nor shall it have any effect whatsoever upon said Trust Estate, its operation or mode of business, nor shall it entitle her heirs or assigns or representatives to take any action in the Courts of law or equity against the Estate, its Trustees or property or its business operations of any kind, all of which **shall remain intact and undisturbed** thereby, but they shall succeed only to the rights of the original Beneficiary as herein set forth.

SECTION 3:  At the time of the death of the Beneficiary, her equitable interest in said Trust Estate, unless disposed of otherwise by said Beneficiary, shall pass to and vest in her heirs in accordance with the laws of descent and distribution then in force, applicable to the equitable interest of such Beneficiary in said Trust Estate. **(The term "Beneficiary" applies not only to Margaret Hunt but to all her successors to beneficial interests under this Trust)**.

ARTICLE IV. MISCELLANEOUS PROVISIONS

SECTION 3:  **This trust shall continue until the death of Margaret Hunt, the original Beneficiary herein, and for twenty-one years after the death date of her death.** *[sic]* At the end of said period of time the said Trustee shall proceed to wind up the affairs, liquidate the assets, and distribute the same among the existing beneficiaries, but **until such time no beneficiary shall ever be entitled to the**

16

**dissolution, termination, or disruption of said trust**, or to maintain suits, in courts of law or equity, against said estate, its Trustees, or its property, or business operations of any kind, it being hereby distinctly understood and agreed that full and complete title, ownership, management, direction, control and dominion is vested in said Trustee and his successors, subject only to the provisions herein with respect to the Advisory Board as aforesaid, for said term of years.

SECTION 4:  **The Beneficiary may receive from time to time** during the life of this trust, **such portions of the net profits** accruing from time to time to this Trust Estate, **as the Trustee**, acting with the advise and consent of the Advisory Board, **may see fit to pay over and deliver to the Beneficiary**.  Net profits shall be determined by the annual audits as provided for herein, and the **Trustee shall never in any event pay to the Beneficiary, during any one calendar year, any sum in excess of the net profits for the preceding calendar year**.  No duty is imposed upon the Trustee to make such distribution of net profits, but the power is conferred upon his, acting with the advice and consent of the Advisory Board, so to do, and in exercising this discretion said Trustee and Advisory Board shall give full consideration to the interest of both the Beneficiary and this Trust Estate.[39]

34.    Keliher who is now the Executor of the Estate of Albert G. Hill, Jr., was a named party in the Prior Case[40], and a Signing Party to the GSA, both individually and as Trustee of both Margaret's and Hassie's Trusts (MHTE & HHTE)[41], was at all times fully knowledgeable concerning the foregoing MHTE and HHTE Trust instruments and the conditions upon which they could be terminated. Upon acceptance of these Court appointed positions Keliher assumed fiduciary duties to Plaintiffs.  She was also fully knowledgeable of the GSA, its purposes and intent, the Final Judgment, and the New Hunt Trusts created thereby.

35.    Miller who was an Additional Party to the GSA[42] is now Trustee of The Al G. Hill, Jr. Family Trust.  In the Final Judgment Miller was appointed by this Court as an Advisory Member for the MHTE – Heather H. Washburne Trust[43]; and as an Advisory Member for the MHTE – Elisa H. Summers Trust[44].  Upon acceptance of these Court appointed positions Miller assumed

---

[39] *Id.*
[40] Doc. 999, Caption, p. 1.
[41] Doc. 879, p. 29; Doc. 999, p. 3.
[42] Doc. 999-1, Exhibit 2.
[43] Doc. 999, p. 18.
[44] Doc. 999, p. 19.

fiduciary duties to Plaintiffs. Miller at all times has been fully knowledgeable concerning the foregoing MHTE and HHTE Trust instruments and the conditions precedent to termination. He was also fully knowledgeable of the GSA, its purposes and intent, the Final Judgment, and the New Hunt Trusts created thereby.

36.    In the Final Judgment this Court appointed Chester Donnally as Trustee for the MHTE – Albert G. Hill, Jr. Trust[45]; as Advisory Board Member for the MHTE – Albert Hill, Jr. Income Beneficiary / Al III Termination Beneficiary Trust[46]; as Trustee for the MHTE – Albert Hill, Jr. Income Beneficiary / Heather Termination Beneficiary Trust[47]; as Trustee for the MHTE – Albert Hill, Jr. Income Beneficiary / Elisa Termination Beneficiary Trust[48]; and as Trustee for the HLTE – Albert G. Hill, Jr. Trust[49]. Upon acceptance of these Court appointed positions Donnally assumed fiduciary duties to Plaintiffs. Donnally at all times has been fully knowledgeable concerning the foregoing MHTE and HHTE Trust instruments and the conditions precedent to termination. He was also fully knowledgeable of the GSA, its purposes and intent, the Final Judgment, and the New Hunt Trusts created thereby.

37.    Irwin was a Defendant in the Prior Case[50], an Agreeing Party, who signed "in all capacities"[51]. In the Final Judgment this Court appointed Irwin as an Advisory Board Member for MHTE – Albert G. Hill, Jr. Trust[52]; and as an Advisory Board Member for HLTE – Albert G. Hill, Jr. Trust[53]. Upon acceptance of these Court appointed positions Irwin assumed fiduciary duties to Plaintiffs. Irwin has at all times has been fully knowledgeable concerning the foregoing

---

[45] Doc. 999, p. 12.
[46] Doc. 999, p. 13.
[47] Doc. 999, p. 15.
[48] Doc. 999, p. 16.
[49] Doc. 999, p. 23.
[50] Doc. 999, Caption, p. 1.
[51] Doc. 879, p. 28; Doc. 999, p. 3.
[52] Doc. 999, p. 12.
[53] Doc. 999, p. 23.

MHTE and HHTE Trust instruments and the conditions precedent to termination.  He was also fully knowledgeable of the GSA, its purposes and intent, the Final Judgment, and the New Hunt Trusts created thereby.

38.    In the Final Judgment this Court appointed Thomas Tatham ("Tatham") as an Advisory Board Member for the MHTE – Albert G. Hill, Jr. Trust[54]; for the MHTE – Albert G. Hill, Jr. Income Beneficiary / Heather Termination Beneficiary Trust[55]; as an Advisory Board Member for the MHTE – Albert G. Hill, Jr. Income Beneficiary / Elisa Termination Beneficiary Trust[56]; and as an Advisory Board Member for the HLHTE - Albert G. Hill, Jr. Trust[57].  Upon acceptance of these Court appointed positions Tatham assumed fiduciary duties to Plaintiffs. Tatham has at all times has been fully knowledgeable concerning the foregoing MHTE and HHTE Trust instruments and the conditions precedent to termination.  He was also fully knowledgeable of the GSA, its purposes and intent, the Final Judgment, and the New Hunt Trusts created thereby.

39.    On March 18, 2016, Donnally, Irwin, and Tatham embarked upon a course of action incompatible with their fiduciary duty to Hill III and his family, that directly violated and clearly contravened the terms of the H.L. Hunt Trust instruments, the GSA, and the Final Judgment, and they did so while they were continuing to act under authority conferred upon them by this Court, having been appointed as Trustees or Advisory Board Members for multiple Final Judgment New Hunt Trusts.[58]

---

[54] Doc. 999, p. 12.
[55] Doc. 999, p. 15.
[56] Doc. 999, p. 16.
[57] Doc. 999, p. 23.
[58] The MHTE – Albert G. Hill, Jr. Trust; and Advisory Board Member for the MHTE – Albert Hill, Jr. Income Beneficiary / Al III Termination Beneficiary Trust; the MHTE – Albert G. Hill, Jr. Income Beneficiary / Heather Termination Beneficiary Trust; the MHTE – Albert G. Hill, Jr. Income Beneficiary / Elisa Termination Beneficiary Trust; MHTE – Albert G. Hill, Jr. Income Beneficiary / Elisa Termination Beneficiary Trust; the HLHTE - Albert G. Hill, Jr. Trust.  Doc. 999, ¶¶8, 9.

40.    Despite their obvious fiduciary duties to Hill III and his children and in violation of those duties, Donnally, Ivan Irwin, Jr. ("Irwin") and Thomas Tatham ("Tatham")—without giving notice to Hill III or his children filed an Original Petition in Dallas County Probate Court No. 2 in which they asked for court approval to dissolve the Trusts.

41.    Donnally, Irwin and Tatham asked the Probate Court to declare that Donnally (as Trustee) could terminate Final Judgment Trusts, relying on a reference in the language of the Trusts to "voluntary dissolution."  In a subsequent memorandum submitted at the request of the Court, counsel for Donnally, Irwin and Tatham, cited "the absence of any case law applying the term 'voluntary dissolution'" in the context of a termination of a trust and urged that the Trustee "should not be required to act at his peril with respect to a highly unusual term in a trust instrument."

42.    Donnally, Irwin and Tatham falsely represented to the Probate Court that the requested relief had been "adopted and requested by the holders of all equitable interest in the MHTE Trust and the HLHTE Trust."  In fact, Donnally, Irwin, and Tatham well knew the vested current and potential income and remainder interests of Al Hill III, and the future or contingent interests of Al III's children had not adopted or requested that the Trusts be terminated.  Also, though fully aware of the falsity of these statements, Al Hill, Jr. "adopted and requested" the relief sought by Donnally, Irwin and Tatham.  On information and belief, Lyda Hill, Heather Washburne and Elisa Summers also requested termination of Final Judgment New Hunt Trusts, despite knowing the vested current and potential income and remainder interests of Al Hill III, and the future or contingent interests of Al III's children, (1) had not adopted or requested that the Trusts be terminated, and (2) had no knowledge of nor had approved of Donnally, Irwin and Tatham's wrongful actions of terminating trusts.

43.     In fact, neither Plaintiffs nor any of their children were even given notice of the probate court proceeding seeking to terminate trusts in which they had an interest.  Under Texas law, terminations of the Trusts would require notice to Plaintiffs, their children, and Court approval.  There was no notice to Al III, and he did not "adopt and request" the relief sought.

44.     These actions by Donnally, Irwin and Tatham, acting as agents for Al Hill, Jr., Lyda Hill, Heather Washburne, and Elisa Summers, constituted serious breaches of their fiduciary duties to Al Hill III, and his children—owed to all beneficiaries of the Trusts, whether current or remainder beneficiaries—including, but not limited to: (1) failing to treat the beneficiaries impartially, by purposefully excluding Al III and his children from the proceeding and by attempting to eliminate his interest in the Trusts; (2) failing to abide by their duty to account, by not disclosing fully to Al III all material facts known to them that might affect his interests, including the plan to seek judicial permission to terminate the Trusts, and (3) failing to treat fairly all to whom they owed a fiduciary duty.  Additionally, the actions of Donnally, Irwin and Tatham were violations of duties imposed upon them by the court to serve as neutral advisers and trustees and to truthfully and accurately record and report on their court -approved duties.

45.     Following a hearing before Probate Court No. 2, held without notice to Al Hill III, that court entered an order stating:

> [T]he phrase "or by voluntary dissolution" found in Article III §1 of each Trust agreement is ***unusual language*** to describe the termination of a trust.  The Court is unaware of any applicable case law.  Reading the Trust as a whole, a ***voluntary dissolution of the Trust is inconsistent with the material purposes of each Trust***.[59]

The defendants were expressly told by a court that they could not dissolve these trusts and take the assets for themselves.

---

[59]  Attached as **Exhibit D** - Final Judgment filed in PR-16-01012-2, at 3 (July 29, 2016) (emphasis added).

46.     As a present income beneficiary and remainder termination beneficiary, Al Hill III had at least the same rights to notice as his sisters.  Indeed, Al III's sister, Heather Washburne, filed a Petition for Intervention two months after the Probate Court's July 29, 2016, Final Judgment, alleging her status as "a remainder beneficiary" of the Trusts and "a daughter of Al Hill, Jr."[60] Washburne asserted that, because she "was not a party to this proceeding at the time of entry of the [Court's] Final Judgment," "a new trial is appropriate in the interest of justice to allow her to protect her interest" in the Trusts.  The Probate Court agreed and held a new trial, although again Al III still had not been notified of, nor did he know about, the proceedings.

47.     On October 6, 2016, the Probate Court entered a revised Final Judgment that vacated and replaced its original Final Judgment but again refused to recognize the Trustee's power to terminate the Trusts.  None of the parties to the proceedings sought a bill of review to set aside the Final Judgment.

48.     The actions taken by Defendants before the Probate Court demonstrate that Defendants at all times had knowledge of Plaintiffs' rights and their obligations under the terms of the Trusts, the GSA, and the Final Judgment.  Their actions are incompatible with honest and honorable motives and evidence their intent to deprive Plaintiffs of their rights in the Trusts by means of fraud and deception.

49.     As part of their request of the probate court for permission to terminate the trusts defendant Donnally had plead that as a trustee he "*should not be required to act at his peril with respect to a highly unusual term in a trust instrument*."  Yet, when permission was twice denied he did exactly that, and terminated the Trusts just over two months later, on December 13, 2016.

---

[60]  Attached as **Exhibit E** - Petition in Intervention in PR-16-01012-2, at 1 (Sept. 30, 2016).

The remaining trust corpus of each Trust was distributed to Al Hill Jr., as the sole current beneficiary of the Trusts, outright and free of trust.

50.    Plaintiff believes that certain assets of the Trusts have been transferred into the CLAT for which his sisters, Heather and Elisa serve as trustees, and that assets of the Trusts have been transferred into the Estate of Albert G. Hill, Jr., for which Keliher serves as Executor, and yet other assets of the Trusts have been transferred into The Al G. Hill, Jr. Family Trust for which Defendant Tyree B. Miller ("Miller") serves as Trustee.

51.    On December 13, 2016 Donnally terminated the Trusts with execution of certain documents pertaining to each Trust (the "Resolutions"). Donnally, members of the Advisory Board, and Al Hill Jr. executed two sets of documents: (1) Trustee Resolution and Record of Trust Termination for each Trust[61] and (2) Ratification of Acts of Trustee and Trust Advisors and Release and Indemnity Agreement for each Trust. [62]

52.    In addition, as part of the Resolutions, Washburne and Summers executed an Addendum to Release Agreement for each Trust (the "Addendums"), stating:

> Each of us has reviewed the foregoing Release Agreement, as well as the terms of the [Trust] Agreement. We do not object to the action of the Trustee and the Trust Advisors should they exercise their discretion to terminate the [Trust] on or before December 31, 2016. We realize the Trustee and Trust Advisors will rely upon this statement in determining whether they will or will not exercise their discretion to terminate the [Trust].[63]

53.    Washburne and Summers executed these Addenda knowing that the effect was to increase their share of the Trusts by excluding their brother, Al Hill III. They knowingly made

---

[61] Attached as **Exhibit F** - MHTE—Albert G. Hill, Jr. Trust Trustee Resolution and Record of Trust Termination (Dec. 13, 2016) and HLHTE—Albert G. Hill, Jr. Trust Trustee Resolution and Record of Trust Termination (Dec. 13, 2016).

[62] Attached as **Exhibit G** - Ratification of Acts of Trustee and Trust Advisors and Release and Indemnity Agreement Pertaining to the MHTE-Albert G. Hill, Jr., Trust Estate and Pertaining to the HLHTE-Albert G. Hill, Jr., Trust Estate.

[63] Attached as **Exhibit H** - Addendum to Release Agreements Pertaining to the MHTE-Albert G. Hill, Jr., Trust Estate and Pertaining to the HLHTE-Albert G. Hill, Jr., Trust Estate.

an agreement with their father and their aunt, Lyda Hill to deprive Hill III, and his children, of their interest in the Trusts. Indeed, the Addendums expressly provide—by language emphasizing the reliance by the Trustee and Trust Advisors—that the wrongful terminations would not occur, but for Washburne's and Summers's execution of the Addendums. Thus, Washburne and Summers were key players in the conspiracy and conduct that wrongfully manipulated trusts to exclude others and increase their shares.

54.    Al Hill III who was an income beneficiary with the same status as his sisters as a remainder beneficiary of each Trust. Yet he was given no notice of the efforts to terminate the trusts and —did not consent to the terminations. Under Texas law, a termination of the Trusts would require notice to Plaintiffs and Court approval. In addition, Plaintiff's children, Hill IV, Nance and Caroline, who had equitable interests as future or contingent beneficiaries had no notice and gave no consent.

55.    The Final Judgment New Hunt Trusts are "blood" Trusts, meaning that no person not of H.L. Hunt's blood can be a beneficiary or have either an income or termination interest in trusts derived from the Margaret or the Hassie Trusts.

56.    Lyda Hill is childless and cannot disclaim her interest in either Trust to anyone other than a blood relation of H.L. Hunt.

57.    Thus, Lyda Hill can only receive a termination interest from the Hassie Trust if she survives to April 20, 2026, and she can only receive a termination interest from the Margaret Trust if she survives to June 14, 2028.

58.    Should Lyda Hill fail to survive to receive a termination interest from either the Hassie or the Margaret Trusts, those interests will revert to the children of her siblings.

59.     Upon information and belief, Al Hill III's aunt, Lyda Hill, working in cooperation with Hill Jr., and Al Hill III's sisters, Heather and Elisa, has terminated two additional Final Judgment New Hunt Trusts, the MHTE - Lyda Hill Trust[64], and the HLTE – Lyda Hill Trust[65], and has taken possession of the assets of those Trusts.

60.      In terminating these Trusts Lyda Hill has wrongfully taken property or termination interests to which she was not entitled under the terms of the Trusts, the GSA, and the Final Judgment.  By taking these termination interests she has cut-off and destroyed future or contingent and equitable interests of Plaintiffs without their knowledge or consent.

61.     The actions of Donnally, Irwin and Tatham were not only direct and purposeful violations of the GSA and this Court's Final Judgment, but also constituted breaches of their fiduciary duties to Plaintiffs—owed to all beneficiaries of the Trusts, whether current or remainder beneficiaries.  These breaches of fiduciary duty included but were not limited to: (1) failing to treat the beneficiaries impartially, by purposefully excluding Plaintiffs from the Resolutions and by attempting to eliminate his interest in the Trusts, and (2) failing to abide by their duty to account, by not disclosing fully to Plaintiffs all material facts known to them that might affect his interests, including the Resolutions and the plan to terminate the Trusts.

62.     As Executor of Al Hill Jr.'s estate, Keliher has taken property into her possession that she knows, or has reason to know, has been wrongfully and tortiously taken from the Final Judgment New Hunt Trusts in violation of the trust instruments, the GSA, and the Final Judgment.

63.     As Trustee of The Al G. Hill, Jr. Family Trust, Miller has taken property into his possession that he knows, or has reason to know, has been wrongfully and tortiously taken from

---

[64] Doc. 999, p. 8.
[65] Doc. 999, p. 21.

the Final Judgment New Hunt Trusts in violation of the trust instruments, the GSA, and the Final

Judgment.

64.     Plaintiffs did not learn of the wrongful termination and liquidation of the Final

Judgment New Hunt Trusts until May 15, 2018.

## FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT
(All Defendants except Donnally and Tatham)

65.      Plaintiffs repeat and re-allege the allegations of paragraphs 1 through 64 of this

Complaint, as if fully set forth herein.

66.     The GSA is a contract that is binding upon all parties, including Signing Parties and

Additional Parties, and included all Defendants, except Donnally and Tatham.

67.     Fundamental to the GSA was the acceptance of and stipulation by all the parties

that Al Hill Jr.'s March 22, 2005 Disclaimer was valid, with the legal effect that upon Margaret's

death on June 14, 2005 each of Hill Jr.'s children, Hill III, Heather, and Elisa, became vested in a

25% income interest, and a 30% termination interest, in Margaret's Trust (MHTE).

68.     Also fundamental to the GSA was the parties' agreement that the rights of Hill Jr.'s

children in Margaret's Trust (MHTE) were being transferred into the Final Judgment New Hunt

Trusts, and the rights of Hill Jr., and Hill Jr.'s children, Hill III, Heather Washburne, and Elisa

Summers in Margaret's Trust (the MHTE), as they existed before the GSA, would not be changed

by the GSA, such that whatever rights the Signing Parties had prior to the GSA would continue

from the date of execution of the GSA (May 13, 2010) until termination and liquidation of

Margaret's Trust (June 14, 2028).

69.     Thus, had Hill Jr. survived June 14, 2028, he would have received 25% of the Trust

proceeds upon dissolution, and each of his children, Hill III, Heather, and Elisa, would each have

received 25%. But since Hill Jr. did not survive June 14, 2028, each of his children who survive

June 14, 2028 will receive 33% of trust proceeds upon dissolution. And, if any of Hill Jr.'s children do not survive, then their children, *e.g.*, Hill III, then Hill III's children, Hill IV, Nance, and Caroline, will share what would have come to Hill III.

70.    Fundamental as well to the GSA was the parties' agreement that the rights of Lyda Hill, Hill Jr., and Hill Jr.'s children (Hill III, Heather, and Elisa), in Hassie's Trust (the HHTE), as they existed before the GSA, would not be changed by the GSA, and that whatever rights the Signing Parties had prior to the GSA would continue from the date of execution of the GSA (May 13, 2010) until termination of Hassie's Trust (April 20, 2026).

71.    Thus, to be eligible to receive a share from distribution of proceeds upon dissolution of Hassie's Trust, Lyda Hill and/or Hill Jr. would have to be alive. Similarly, upon dissolution of Margaret's Trust, Lyda Hill would have to be alive to receive a share from distribution of proceeds.

72.    The parties to the GSA agreed to be bound by the terms of the original Trusts for Margaret and Hassie that were established by H.L. Hunt in 1935.

73.    Preservation of trust assets from the Margaret and Hassie Trusts in the Final Judgment New Hunt Trusts until their termination dates on April 20, 2026 and June 14, 2028 was a material term and an essential benefit of the bargain to Hill III when he signed the GSA on May 13, 2010, both for himself and "derivatively on behalf of the MHTE and the HHTE, and as next friends, and on behalf of Albert Galatyn Hill IV, Nance Haroldson Hill and Caroline Margaret Hill."[66]

74.    By dissolving the Final Judgment New Hunt Trusts that had derived from the MHTE and HHTE, prior to the termination dates established by H.L. Hunt, Al Hill, Jr., Lyda Hill, Heather Washburne, and Elisa Summers took possession of Trust assets into their personal estates,

---

[66] Doc. 879, p. 28.

and beyond the reach of Plaintiffs. The Defendants' conduct breached the implied covenant of good faith and fair dealing that is applicable to all contracts in the State of Texas. These actions were breaches of the GSA that violated the terms of the MHTE and HHTE Trusts as well as the New Hunt Trusts, damaging Plaintiffs.

75.     Plaintiffs are entitled to judgment against these Defendants in amounts to be determined at trial and for which they now sue.

## SECOND CAUSE OF ACTION FOR DECLARATORY RELIEF
### (All Defendants)

76.     Plaintiffs repeat and re-allege the allegations of paragraphs 1 through 75 of this Complaint, as if fully set forth herein.

77.     Defendants have come into control of property of the New Hunt Trusts.

78.     Pursuant to Texas Property Code § 115.001 and CPRC § 37.005, Plaintiffs seek a declaratory judgment from this Court that (1) Donnally, Irwin and Tatham breached their fiduciary duties to Plaintiffs—including but not limited to (as set forth herein) their fiduciary duties of impartiality and duties to account—by participating in a scheme with Al Hill, Jr., Lyda Hill, Washburne and Summers to wrongfully terminate the Trusts in an attempt to deprive Al Hill III of his remainder interest in the Trusts, which is at least equal to that of his sisters; and (2) as a result of this wrongful termination, achieved with the knowing participation of Defendants, Defendants obtained all of the assets of the Trusts and have been unjustly enriched by the retention of assets to which Plaintiffs are entitled, as both an income and a remainder beneficiary with an interest in the Trusts, which at least equal to that of Hill III's sisters.

79.     Pursuant to Texas Property Code § 114.008(a)(9), Al Hill III and his children seek from this Court the imposition of a constructive trust over all of the assets of the Trusts that were distributed to Defendants as a result of the wrongful termination of the Trusts.

80.     From the assets of the constructive trust imposed by this Court, Plaintiffs are entitled to amounts to be determined at trial and for which they now sue.

### THIRD CAUSE OF ACTION IMPOSITION OF CONSTRUCTIVE TRUST (CONVERSION)
(All Defendants)

81.     Plaintiffs repeat and re-allege the allegations of paragraphs 1 through 80 of this Complaint, as if fully set forth herein.

82.     Defendants wrongfully exercised dominion and control over the property of the Trusts in a way that departed from the conditions under which it was received by them, thereby converting the property.

83.     Plaintiffs are entitled to judgment against these Defendants in amounts to be determined at trial and for which they now sue.

### FOURTH CAUSE OF ACTION FOR TORTIOUS INTERFERENCE WITH CONTRACT
(Against Donnally and Tatham)

84.      Plaintiffs repeat and re-allege the allegations of paragraphs 1 through 83 of this Complaint, as if fully set forth herein.

85.     Plaintiffs had contractual rights established by the GSA.

86.     Plaintiffs reasonably expected that performance of the GSA would preserve their interests in the Final Judgment New Hunt Trusts.

87.     Donnally and Tatham with knowledge of Plaintiffs contractual expectations under the GSA, assisted Al Hill, Jr., Lyda Hill, Heather Washburne and Elisa Summers in destroying those contractual expectations.

88.     By assisting Al Hill, Jr., Lyda Hill, Heather Washburne and Elisa Summers in terminating and liquidating the Final Judgment New Hunt Trusts, Donnally, Irwin, and Tatham interfered, without justification, with Plaintiffs rights under the GSA.

29

89.     Donnally and Tatham took actions at the direction of Al Hill, Jr., Lyda Hill, Heather Washburne and Elisa Summers that interfered with the rights of Plaintiffs under the GSA.

90.     As a proximate result of the actions by Donnally and Tatham, Plaintiffs suffered actual damages (general and special), for which they now sue.

### FIFTH CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTIES
### FEE DISGORGEMENT
(Against Donnally, Irwin, and Tatham)

91.     Plaintiffs repeat and re-allege the allegations of paragraphs 1 through 90 of this Complaint, as if fully set forth herein.

92.     Donnally, Irwin and Tatham owed fiduciary duties to Plaintiffs, including, but not limited to, their fiduciary duties of impartiality and duties to account.

93.     Donnally, Irwin and Tatham breached those duties as described above.

94.     As a proximate result of the actions by Donnally, Irwin and Tatham, Plaintiffs suffered actual damages (general and special), for which they now sue.

95.     Donnally, Irwin, and Tatham committed serious breaches of fiduciary duties and should be required to disgorge all fees or compensation they received related to their work for and employment by the Trusts or by Defendants to Plaintiffs.

### SIXTH CAUSE OF ACTION FOR AIDING AND ABETTING
### BREACH OF FIDUCIARY DUTIES
(Against Al Hill, Jr., Lyda Hill, Washburne and Summers)

96.     Plaintiffs repeat and re-allege the allegations of paragraphs 1 through 95 of this Complaint, as if fully set forth herein.

97.     As set forth above, Donnally, Irwin and Tatham owed fiduciary duties to Plaintiffs, including, but not limited to, their fiduciary duties of impartiality and duties to account.

98.    Al Hill, Jr., Lyda Hill, Heather Washburne and Elisa Summers had full knowledge of those fiduciary duties and encouraged, aided and abetted the breaches of fiduciary duty by Donnally, Irwin and Tatham.

99.    Al Hill, Jr., Lyda Hill, Heather Washburne and Elisa Summers were aware at all times that they were participating, and aiding, in the breach of the fiduciary duties owed by Donnally, Irwin and Tatham, to Plaintiffs, and their children.

100.    As a proximate result of the wrongful and tortious actions by Al Hill, Jr., Lyda Hill, Heather Washburne and Elisa Summers, Plaintiffs suffered actual damages (general and special), for which they now sue.

## SEVENTH CAUSE OF ACTION FOR CIVIL CONSPIRACY
(Against All Defendants)

101.    Plaintiffs repeat and re-allege the allegations of paragraphs 1 through 100 of this Complaint, as if fully set forth herein.

102.    Defendants's purpose was to destroy the Trusts in violation of their lawful terms, the GSA, and the Final Judgment.  Knowing that the purpose of their agreement was unlawful each Defendant joined with one or more persons to accomplish, as the object of their joinder, a scheme to terminate the Trusts, in direct disregard of this Court's Final Judgement and in an attempt to deprive Al Hill III and his children of a remainder beneficiary interest in the Trusts.

103.    Al Hill, Jr., Keliher, Miller, Lyda Hill, Heather Washburne, and Elisa Summers each had a meeting of the minds with those they joined on this joint object and on the course of action to accomplish it: specifically, Al Hill, Jr., Heather Washburne and Elisa Summers all adopted and requested that Donnally, Irwin, and Tatham endeavor to terminate the Trusts—in an attempt to deprive Al Hill III of a remainder beneficiary interest in the Trusts—and took measures

to further that effort, including executing the Resolutions and concealing their scheme from Al Hill III and his children.

104.     At the time of their joinder, Al Hill, Jr., Keliher, Miller, Lyda Hill, Heather Washburne and Elisa Summers each was aware of the scheme to deprive Al Hill III of a remainder beneficiary interest in the Trusts.

105.     Numerous persons with whom Al Hill, Jr., Keliher, Miller, Lyda Hill, Heather Washburne and Elisa Summers joined committed wrongful, overt acts in furtherance of this joint object and course of action.

106.     As a proximate result of the joinder by Al Hill, Jr., by Keliher, by Miller, by Lyda Hill, by Heather Washburne and by Elisa Summers in this joint object and course of action, Plaintiffs suffered actual damages (general and special), for which they now sue.

## EIGHTH CAUSE OF ACTION FOR AIDING AND ABETTING
(Against Al Hill, Jr., Keliher, Miller, Lyda Hill, Washburne and Summers)

107.     Plaintiffs repeat and re-allege the allegations of paragraphs 1 through 106 of this Complaint, as if fully set forth herein.

108.     Al Hill, Jr., Keliher, Miller, Lyda Hill, Heather Washburne and Elisa Summers each knowing that their actions in terminating the Trusts was tortious, provided substantial assistance and/or encouragement in the scheme to terminate the Trusts—in direct disregard of this Court's Final Judgment and in an attempt to deprive Al Hill III of a remainder interest in the Trusts—or provided substantial assistance and/or encouragement to those who engaged in the scheme.

109.     Al Hill, Jr., Keliher, Miller, Lyda Hill, Heather Washburne and Elisa Summers each provided such substantial assistance and/or encouragement with fraudulent and unlawful intent.

110. As a result of this substantial assistance and/or encouragement by Al Hill, Jr., Keliher, Miller, Lyda Hill, Heather Washburne and Elisa Summers, Plaintiffs suffered actual damages (general and special), for which they now sue.

## NINTH CAUSE OF ACTION FOR UNJUST ENRICHMENT
(Against Al Hill, Jr., Lyda Hill, Washburne and Summers)

111. Plaintiffs repeat and re-allege the allegations of paragraphs 1 through 110 of this Complaint, as if fully set forth herein.

112. Defendants Hill Jr, Lyda Hill, Washburne and Summers were unjustly enriched by conspiring to, and actually committing acts, to gain benefits to which they were not entitled by manipulating the termination of trusts and taking the assets for themselves.

113. These acts were a breach of the GSA and terms of the trusts. To the extent these defendants claim there is any legal defense to the enforcement of the GSA, or that the could terminated the trusts, then they should be required to provide restitution of the assets wrongfully acquired.

114. As a result of the wrongful actions by Al Hill, Jr., Lyda Hill, Heather Washburne and Elisa Summers —including conversion, fraud and other unconscionable activity—Defendants have wrongfully secured and received assets from the terminated Trusts—including assets to which Al Hill III is entitled—that it would be unconscionable for them to retain and for which Al Hill III and his children now sue.   Plaintiffs are entitled to restitution of the assets converted and wrongfully acquired including, but not limited to, imposition of a constructive trust.

## TENTH CAUSE OF ACTION EQUITABLE REFORMATION
(Against All Defendants)

115. Plaintiffs repeat and re-allege the allegations of paragraphs 1 through 114 of this Complaint, as if fully set forth herein.

116.    When the parties to the GSA signed the Agreement they acknowledged and recognized that when Hill III signed the GSA he was acting for the MHTE and HHTE Trusts.  The GSA provides that in addition to acting for himself, and his children, Hill III "was acting derivatively on behalf of the MHTE and the HHTE"[67] which were parties to the GSA.

117.    The actions Defendants have taken to terminate and dissolve the Final Judgment New Hunt Trusts prior to the dates established by H.L. Hunt in the MHTE and HHTE trust instruments (April 20, 2026 and June 14, 2028) are wrongful and violate H.L. Hunt's intent in creating the trusts and constitute a breach the GSA.

118.    The GSA recognized that all legal and equitable remedies, including specific performance, are available to remedy any breach of the Agreement.[68]

119.    As the recognized representative of the MHTE and HHTE trusts, and therefore, the Final Judgment New Hunt Trusts derived therefrom, Hill III has standing to seek reformation of the trusts.

120.    As a result of the wrongful actions by Al Hill, Jr., Lyda Hill, Heather Washburne and Elisa Summers —including fraud and other unconscionable activity—Defendants have wrongfully secured and received assets from the terminated Trusts which they should be ordered to return to the Trusts, for which Plaintiffs now sue.

## EXEMPLARY DAMAGES
(Against All Defendants)

121.    Plaintiffs repeat and re-allege the allegations of paragraphs 1 through 120 of this Complaint, as if fully set forth herein.

---

[67] Doc. 879, ¶ I(F), p. 2; p. 28.
[68] Doc. 879, ¶5(r).

122.    Plaintiffs suffered actual damages (general and special) as a result of the actions by all Defendants, including fraud, gross negligence, and acting with malice.  Therefore, All Defendants are each liable to Plaintiffs for exemplary damages, for which they now sue.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, Albert G. Hill, III, and Erin Nance Hill pray that all Defendants be cited to appear and answer; that this Court grant the requested declaratory and equitable relief, that they recover from Defendants, jointly and severally, their actual damages (general and special, including attorneys' fees as damages), disgorgement of fees and compensation, exemplary damages, pre- and post-judgment interest, attorneys' fees, and costs of court; and that they have such further relief to which they may show themselves justly entitled.

Dated:  December 12, 2020

SKEPNEK LAW FIRM, P.A.

By: /s/ William J. Skepnek

    William Skepnek, SBN 00790059
    1 Westwood Rd,
    Lawrence, KS 66044
    Tel: 785.856.3100 | Cell: 785.550.7750
    Email:  bskepnek@skepneklaw.com

LATHROP GPM LLP

By: /s/ Robert E. Thackston

    Robert E. Thackson
    2101 Cedar Springs Road, Suite 1400
    Dallas, TX 75201
    Tel: 469.983.6023 | Fax: 469.983.6101
    Email:  robert.thackston@lathropgpm.com

Attorneys for Plaintiff

JURY TRIAL DEMANDED