## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **ALBERT G. HILL, III and ERIN NANCE HILL,** | § § § | |
| Plaintiffs, | § § | |
| v. | § § § | Civil Action No. **3:20-CV-3634-L** |
| **THE ESTATE OF ALBERT G. HILL JR.; MARGARET KELIHER; TYREE B. MILLER; LYDA HILL; HEATHER HILL WASHBURNE; ELISA HILL SUMMERS; CHESTER J. DONNALLY, JR.; THE ESTATE OF IVAN IRWIN JR.; CAROL E. ERWIN; and THOMAS P. TATHAM,** | § § § § § § § § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the court are Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b) and Brief in Support (other than Defendant Lyda Hill) (Doc. 18), filed March 3, 2021; Motion to Dismiss and Supporting Brief of Defendant Lyda Hill (Doc. 21), filed March 3, 2021; and Plaintiffs' Combined Response and Motion to Strike All Defendants' Motions to Dismiss ("Plaintiffs' Motion to Strike") (Doc. 26), filed April 12, 2021. Having considered the motions, responses, replies, pleadings, record, and applicable law, the court **grants** Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b) (Doc. 18); **grants** Motion to Dismiss of Defendant Lyda Hill (Doc. 21), and **denies** Plaintiffs' Motion to Strike (Doc. 26).

## I.      Factual Background and Procedural History

This lawsuit, filed by Albert G. Hill, III ("Hill III") and Erin Nance Hill ("Erin Hill") (collectively, "Plaintiffs") on December 20, 2020, involves, once again, a dispute relating to two trusts formed by Haroldson Lafayette ("H.L.") Hunt, "the late Texas oil baron reputed to be one of the world's richest men when he died in 1974." *Hill v. Washburne*, 953 F.3d 296, 300 (5th Cir. 2020) (citations omitted). In addition to parsing through the terms of the trusts, the court is required, yet again, to revisit the Global Settlement and Mutual Release Agreement (the "GSA") and the final judgment (the "Final Judgment") issued on November 8, 2010, by the Honorable Reed O'Connor ("Judge O'Connor") of the United States District Court for the Northern District of Texas (Dallas Division) in the lawsuit styled *Hill v. Hunt et al.*, Civil Action No. 3:07-cv-2020-L (the "2020 Action").[1]

In this latest iteration, Plaintiffs assert claims against the Estate of Albert G. Hill, Jr.; Margaret Keliher ("Keliher"), individually and as Executor of the Estate of Albert G. Hill, Jr.; Tyree Miller ("Miller"), individually and as Trustee of The Albert G. Hill, Jr. Family Trust; Chester J. "Don" Donnally, Jr. ("Donnally"), individually and in his capacity as the court appointed trustee for the MHTE-Albert G. Hill, Jr. Trust and the HLHTE-Albert G. Hill, Jr. Trust; Carol E. Irwin ("Irwin"), in her capacity as Personal Representative and Independent Executor of the Estate of Ivan Irwin, Jr., Deceased; Thomas P. Tatham ("Tatham"), individually and in his capacity as an advisory board member for the MHTE-Albert G. Hill, Jr. Trust and the HLHTE-Albert G. Hill, Jr. Trust; Heather Hill Washburne ("Washburne"), individually and as an advisory

---

[1] CM-ECF citations from *Hill v. Hunt et al.*, Civil Action No. 3:07-cv-2020-L (the "2020 Action") are referenced herein as "2020 Action, Doc. __." Also, Judge O'Connor is currently assigned to the Fort Worth Division of the Northern District of Texas.

board member for the MHTE-Albert G. Hill, Jr. Income Beneficiary/Heather Termination Beneficiary Trust; Elisa Hill Summers ("Summers"), individually and as an advisory board member for the MHTE-Albert G. Hill, Jr. Income Beneficiary/Elisa Termination Beneficiary Trust; and Lyda Hill. Plaintiffs contend that they and their three children (Albert Galatyn Hill IV, Nance Haroldson Hill, and Caroline Margaret Hill)[2] are contingent or remainder beneficiaries of various trusts created as a result of the GSA and the Final Judgment. They assert that Defendants, following the December 2, 2017 death of Hill III's father, Albert G. Hill, Jr. ("Hill Jr."), have breached their duties owed to Plaintiffs in the GSA and Final Judgment by terminating and dissolving these trusts in 2016, rather than allowing them to terminate twenty-one years after the deaths of their initial beneficiaries. *See generally* Pls.' Compl., Doc. 1. They make similar allegations against Lyda Hill. Although the history of the dispute between Hill III and his deceased father (and other relatives) is beyond the scope of this opinion, resolving the pending motions to dismiss the Complaint requires the court to revisit the trusts at issue, the 2020 Action, the GSA, and the Final Judgment.

### A. The MHTE and HHTE

On December 28, 1935, H.L. Hunt and his wife Lyda Bunker Hunt created trusts for their six children. Two of those trusts are at issue here, namely: (1) the Margaret Hunt Trust Estate ("MHTE"); and (2) the Haroldson L. Hunt, Jr. Trust Estate ("HHTE"). Each of the trusts is governed by a document titled "Articles of Agreement and Declaration of Trust" (the "1935 Trust Instruments"). The terms of the Trust Instrument for the MHTE are the same as those of the HHTE except for the designation of, and reference to, the primary beneficiary of each trust. The primary

---

[2] As Plaintiffs use the full names of their three children, the court will do the same.

beneficiary of the MHTE was Margaret Hunt Hill and the primary beneficiary of the HHTE was Haroldson L. Hunt, Jr. ("Hassie").  The 1935 Trust Instruments provide that "it is the desire and purpose of said H. L. Hunt and Lyda Hunt" to create an "irrevocable trust," and both provide, among other things, that during the lifetime of the beneficiary, only the annual income could be distributed to the beneficiary requiring that the corpus remain "intact and undisturbed" until twenty-one years after the death of the named beneficiary, at which time the trust would terminate and the corpus of the trust would be distributed to the beneficiary's descendants per stirpes. Exhibit B to Pls.' Compl., Doc. 1-2 at 10-11, Art. IV § 3 (MHTE); Exhibit C to Pls.' Compl., Doc. 1-3 at 10-11, Art. IV § 3 (HHTE).

Article III, Section 3 of the 1935 Trust Instruments, however, provides a current MHTE and HHTE beneficiary with powers of appointment, as follows:

> At the time of the death of the Beneficiary, her [or his] equitable interest in said Trust Estate, *unless disposed of otherwise by said Beneficiary*, shall pass to and vest in her [or his] heirs in accordance with the laws of descent and distribution then in force, applicable to the equitable interest of such Beneficiary and said Trust Estate. (The term "Beneficiary" applies not only to [Margaret Hunt or Haroldson L. Hunt, based on the language of the specific trust] but to all her [or his] successors to beneficial interests under this Trust.)")
> .

Exhibit B to Pls.' Compl., Doc. 1-2 at 10 Art. III § 3 (MHTE); Exhibit C to Pls.' Compl., Doc. 1-3 at 10 Art. III § 3 (HHTE) (emphasis added).

On April 20, 2005, Hassie died. In his will, Hassie exercised his general testamentary power of appointment in the HHTE in favor of "the lineal descendants of my sister Margaret Hunt Hill, per stirpes." 2020 Action, Doc. 212-6; Doc. 203 at 4-5, § 2; Doc. 211 at 2-4, § II.A. After Hassie's death, therefore, his equitable interests in the HHTE passed in equal shares to Margaret Hunt Hill's three children (Hill Jr., Lyda Hill, and Alinda Hill Wikert), as they were Margaret Hunt Hill's lineal descendants on the date of Hassie's death. *See id.*

### B.  Hill Jr.'s 2005 Disclaimer

On March 22, 2005, Hill Jr. executed a disclaimer as to certain portions of the equitable interests he was to receive under the MHTE (the "2005 Disclaimer") in favor of his three children: Hill III, Washburne, and Summers. The effect of the 2005 Disclaimer is that Hill Jr.'s disclaimed interest passed to Hill III, Washburne, and Summers after Margaret Hunt Hill's death. Specifically, Hill Jr. disclaimed 75% of his one-third income interest in the MHTE, and 90% of his one-third termination interest in the MHTE (the "Disclaimed Beneficial Interests"). 2020 Action, Doc. 879 at 39-40; Doc. 999-1 at 7-8. The 2005 Disclaimer further provided, among other things:

> If MHH [Margaret Hunt Hill] does not exercise her general power of appointment, each intestate heir of MHH will also possess under Article III, Section 3 of the Trust Agreement a general power of appointment allowing such heir to appoint his or her Income Interest or Termination Interest in the Trust, or both, to someone else.

2020 Action, Doc. 879 at 38, ¶ 7; Doc. 999-1 at 6, ¶ 7. The Disclaimer also provided:

> The Disclaiming Beneficiary is not renouncing or disclaiming any interest in the Trust besides the Disclaimed Interests. Thus, the Disclaiming Beneficiary is retaining all interests in the Trust other than the Disclaimed Interests (including, without limitation, the Beneficiary's ***power of appointment*** over such retained interests).

2020 Action, Doc. 879 at 40; Doc. 999-1 at 8.

### C.  The 2020 Action

On June 14, 2007, Margaret Hunt Hill died and her equitable interest in the MHTE passed in equal shares to her three children—Hill Jr., Lyda Hill, and Alinda Hill Wickert—subject to any disclaimers. 2020 Action, Doc. 212-2 at 10, ¶ 18. In December 2007, Hill III brought a lawsuit in Texas state court in his individual capacity and on behalf of the MHTE and HHTE against specific beneficiaries of the MHTE and HHTE, including his father (Hill Jr.), Hill Jr.'s siblings, and the

trustees and members of the advisory boards of the MHTE and HHTE. Among other things, Hill III alleged wrongdoing in the management and administration of the MHTE and HHTE by their respective trustees and violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C § 1961, et seq. A primary focus of the lawsuit was Hill III's claim to be a current beneficiary of the MHTE pursuant to Hill Jr.'s 2005 Disclaimer.[3] Following removal to federal court on December 3, 2007, the case was randomly assigned to Judge O'Connor.

### 1. *The GSA*

Ultimately, Hill III agreed to a settlement of the dispute. On May 13, 2010, the parties entered into the GSA (Doc. 879) that settled this action and related state court actions. *See generally Hill v. Schilling*, 495 F. App'x 480, 482-83 (5th Cir. 2012) (describing genesis of the GSA). In the GSA, the parties stipulated that Hill Jr.'s 2005 Disclaimer was valid. As recently summarized by the Fifth Circuit:

> In exchange for a nine-figure payment and other benefits, Hill III agreed "not to contest the Last Will and Testament of Al Jr. or file any additional action, lawsuit, or legal proceeding challenging the disposition of his property" (the no-contest clause). The parties further "agree[d] that the remedy of specific performance and/or injunctive relief (whether mandatory or by restraint) shall be available for the breach of any term, condition, covenant, or warranty of" the settlement agreement. The parties consented to the district court's continuing jurisdiction over actions to enforce the settlement agreement.

*Hill v. Washburne*, 953 F.3d 296, 301 (5th Cir. 2020).[4]

---

[3] In 2007, Hill Jr. sought to rescind his 2005 disclaimer, along with another partial disclaimer he had executed in 2007. Hill Jr.'s attempt to rescind his disclaimers was ultimately unsuccessful.

[4] The Fifth Circuit also recognized in *Hill v. Washburne*, "After 'protracted [and] complicated' litigation, *Hill v. Schilling*, 593 F. App'x 330, 331 (5th Cir. 2014), squabbling over the trusts was supposedly ended by a settlement agreement confected in 2010. Yet, over the next four years, our court 'weighed in on the settlement' four times. *Id.* This appeal makes it five." *Hill v. Washburne*, 953 F.3d 296, 301 (5th Cir. 2020).

**Memorandum Opinion and Order – Page 6**

2.  *The Final Judgment*

On November 8, 2010, Judge O'Connor issued the Final Judgment implementing and memorializing the parties' GSA, which he incorporated by reference into the Final Judgment. 2020 Action, Doc. 999. Consistent with the GSA, the Final Judgment declared Hill Jr.'s 2005 Disclaimer valid and partitioned portions of the MHTE and the HHTE, as to which Hill Jr. did not disclaim any of his equitable interests, into the Hill Jr. Trusts[5] and, for Hill III's benefit, his one-third interest in the Disclaimed Beneficial Interests, because of the 2005 Disclaimer, were partitioned into the Hill III Trusts.[6] 2020 Action, Doc. 999 at 6, ¶ 5; Doc. 999 at 12-13, ¶¶ 8.f.i and 8.f.ii; Doc. 999 at 20, ¶ 8.i; Doc. 999 at 22-23. ¶ 9.c. The Final Judgment also partitioned portions of the MHTE and HHTE into separate trusts for Lyda Hill,[7] who became the sole current beneficiary of separate one-third shares of each of the MHTE and HHTE trusts. 2020 Action, Doc. 999 at 7-9, ¶¶ 8.a, 9.a.[8] The court notes that Plaintiffs sometimes refer to these trusts, collectively, as the "New Hunt Trusts."

---

[5] These trusts are the (1) the MHTE – Albert G. Hill, Jr. Trust and (2) the HLHTE – Albert G. Hill, Jr. Trust and are referred to herein, collectively, as the "Hill Jr. Trusts."

[6] These trusts are (1) the MHTE – Albert G. Hill, III Trust, for the benefit of Hill III, and (2) the MHTE – Albert G. Hill Jr. Income Beneficiary / Al III Termination Beneficiary Trust, for the benefit of Hill Jr. during his lifetime and for the benefit of Hill III after Hill Jr.'s death and are referred to herein, collectively, as the "Hill III Trusts."

[7] These trusts are the "MHTE-Lyda Hill Trust" and the "HLHTE-Lyda Hill Trust," and are referred to herein, collectively, as the "Lyda Hill Trusts."

[8] In contrast to the recognition of Hill Jr.'s 2005 Disclaimer, Plaintiffs agreed on behalf of themselves and their children, in the GSA and as confirmed in the Final Judgment "that there is no disclaimer by Lyda to the MHTE or HHTE, and agree[d] that they shall not, and they are hereby ORDERED not to, assert any claims, cause of action, count, or counter-claim to the contrary." 2020 Action, Doc. 999 at 37, ¶ 32. The GSA and the Final Judgment also did not grant Hill III or his children any termination interest in Lyda's separate MHTE and HHTE trusts. 2020 Action, Doc. 999 at 8-9, ¶ 8.a and at 20-22, ¶ 9.a.

The Final Judgment enforced the agreeing parties' waiver of standing provision, whereby each agreeing party, defined to include Hill III, agreed to waive any right to demand information, seek accountings, or assert any claim or cause of action in connection with, any trust for the primary benefit of a descendent of Margaret Hunt Hill of which he or she was not a current beneficiary:

**Waiver of Standing**

    28. **IT IS ORDERED that**, pursuant to the Agreement, the Court finds that **during such time as an Agreeing Party is not a current beneficiary of a trust** for the primary benefit of a descendant of Margaret Hunt Hill ("MHH") (an "MHH Trust") and any other descendant of MHH is living, **such Agreeing Party has waived**: (1) his or her **status as an interested person** in such trust, **and (2) all rights that he or she may have** as a future or contingent beneficiary of such trust under the instrument establishing such MHH Trust, under applicable common law, or under applicable state law, **including but not limited to the right to demand information, seek an accounting, or assert any claim or cause of action in connection with any such trust**. . . . IT IS FURTHER ORDERED that, pursuant to the Agreement, the waivers by each Agreeing Party in this paragraph shall not apply to an MHH Trust during any period in which such Agreeing Party **is a current beneficiary** of that MHH Trust, although the waivers in this paragraph shall continue to apply to any actions taken or omitted by any other person or entity during the period that such Agreeing Party **was not a current beneficiary**. For purposes of this paragraph, "current beneficiary" means a person who, at the time a current beneficiary is determined, is then entitled to receive, or is then, in an exercise of discretion by the trustee of such trust, a possible recipient of, income or principal of such trust.

2020 Action, Doc. 999 at 35-36, ¶ 28 (emphasis added).

As the undersigned has held, per the Waiver of Standing clause, each of the parties "agreed to waive his or her standing and right to demand information, seek accountings, or assert any claim or cause of action in connection with any trust for the primary benefit of a descendant of Margaret Hunt Hill of which he or she was not a current beneficiary." 2020 Action, Doc. 1883 at 6 (July 3, 2018 Memorandum Opinion and Order).

**Memorandum Opinion and Order – Page 8**

As part of the Final Judgment, the court, incorporating the No Contest Clause from the GSA, ordered Hill III and Erin Hill (in all their capacities) and the Grandchildren not to contest Hill Jr.'s will or challenge the disposition of his property:

> IT IS ORDERED that Al III (in all capacities), Erin [Hill] (in all her capacities), the Grandchildren, and all of their descendants and heirs shall not contest the Last Will and Testament of Al Jr., or file any additional action, lawsuit, or legal proceeding challenging the disposition of Al Jr.'s property.

2020 Action, Doc. 999 at 36, ¶ 29.

Finally, consistent with the Settlement Agreement, Judge O'Connor retained continuing jurisdiction over the implementation and enforcement of the Final Judgment.[9] On October 2, 2013, the 2020 Action was reassigned to the undersigned following the recusal of Judge O'Connor (who had presided over the matter for approximately sever years), which was followed by the recusals of Judges Lynn, Solis, Godbey, Boyle, Fitzwater, and Kinkeade.

### D.  Hill Jr.'s Will and the Dissolution of the Hill Jr. Trusts

On December 20, 2014, Hill Jr. executed his Will, which included the following provisions in which he exercised his powers of appointment as a current beneficiary of the Hill Jr. Trusts:

> (a)      I hereby exercise the testamentary special power of appointment given to me under paragraph VIII, of The Lyda Hunt-Margaret Trusts, Al G. Hill, Jr., created under the Last Will and Testament of Lyda Bunker Hunt, dated the 16th day of September, 1954, in favor of my grandchildren [AGH, IV, NHH, and CMH], that they should succeed me as to all interests which I have in such Trust estate;
>
> (b)      I hereby exercise the power of appointment given to me under Article III, Section 3 of the Albert Hill Trust, dated the 10th day of April, 1945, in favor of the Al G. Hill, Jr. Family Foundation ("Foundation"), so that the Foundation should succeed me as to all interests which I have in such Trust estate;

---

[9] Hill III appealed the Final Judgment challenging, among other things, the addition of provisions that were not part of the GSA.  The Fifth Circuit affirmed the Final Judgment.  *See Hill v. Schilling*, 495 F. App'x 480 (5th Cir. 2012) (consolidated appeal).

**Memorandum Opinion and Order – Page 9**

> (c)     I hereby exercise the power of appointment given to me under Article III, Section 3 of the HLHTE-Albert G. Hill, Jr. Trust, created under a settlement agreement, by which the Haroldson L. Hunt, Jr. Trust Estate, dated 28th day of December, 1935, was split into separate trusts, in favor of the Al G. Hill, Jr. Charitable Lead Annuity Trust ("CLAT") created under Article IV of THE AL G. HILL, JR. FAMILY TRUST, more particularly defined in paragraph 2,2 below, so that such Al G. Hill, Jr. Charitable Lead Annuity Trust should succeed me as to all interests which I have in such Trust estate;

> (d)     I hereby exercise the power of appointment given to me under Article III, Section 3 of the MHTE-Albert G. Hill, Jr. Trust, created under a settlement agreement, by which the Margaret Hunt Trust Estate, dated December 28, 1935, was split into separate trusts, in favor of the Al G. Hill, Jr. Charitable Lead Annuity Trust created under Article IV of THE AL G. HILL, JR. FAMILY TRUST, more particularly defined in paragraph 2,2 below, so that such Al G. Hill, Jr. Charitable Lead Annuity Trust should succeed me as to all interests which I have in such Trust estate.

2020 Action, Doc. 1883 at 8 (July 3, 2018 Memorandum Opinion and Order). On or about December 13, 2016, the Trustees and the Advisory Board Members of the Hill Jr. Trusts voluntarily dissolved the Hill Jr. Trusts. 2020 Action, Doc. 1883 at 9 (July 3, 2018 Memorandum Opinion and Order).

On December 7, 2017, an Application for Probate of Will and Issuance of Letters Testamentary was filed in the Estate of Albert Galatyn Hill, Jr., Deceased, in Cause No. PR-17-04117-2, Probate Court No. 2, Dallas County, Texas (the "Estate Action"), seeking to admit the Will to probate, and to appoint an independent executor. "On December 22, 2017, Hill III entered the probate proceedings, challenging the terms of the will that appointed executors to [the Hill Jr. Trusts]." *Hill v. Washburne*, 953 F.3d at 302.

On May 29, 2018, Washburne and Summers filed a motion in the 2020 Action seeking to enjoin Hill III from (1) contesting the Will, (2) challenging the disposition of Hill Jr.'s property in violation of the No Contest Clause, and (3) violating the GSA and the Final Judgment by asserting

claims concerning the Hill Jr. Trusts because he was not a current beneficiary. *See* 2020 Action, Doc. 1876. Also, on May 29, 2018, in the 2020 Action, Hill III filed his own motion to enforce the GSA and Final Judgment, contending that the Hill Jr. Trusts that were supposed to be preserved by the Final Judgment had been prematurely and unlawfully terminated by Hill Jr. and his cohorts, thereby destroying the valuable inheritance of Hill III and his descendants, from the H.L. Hunt family, estimated to be worth in excess of $1 billion. *See* 2020 Action, Doc. 1877. Hill III challenged both Hill Jr.'s exercise of his powers of appointment in his will in 2014 and the subsequent dissolution of the trusts in 2016. *Id.* Hill III sought an injunction to preserve the assets of the Hill Jr. Trusts and the Lyda Hill Trusts, and to prevent dissipation, concealment, and further transfer of such assets, and preservation of all records relating to such trusts and actions affecting them. *Id.*

On July 3, 2018, the court denied the requests for injunctive relief of both parties without prejudice, holding any relief would be "premature" because of the pending probate proceedings. 2020 Action, Doc. 1883 at 2 (July 3, 2018 Memorandum Opinion and Order). The court noted that Hill III's failure to disprove the validity of Hill Jr.'s Powers of Appointment would bar him as a matter of law from seeking relief regarding dissolution of the Hill Jr. Trusts due to the Waiver of Standing Clause:

> Pending before the Probate Court is Hill III's request for a declaratory judgment that Hill Jr. lacked the powers of appointment he sought to exercise in his Will with respect to the MHTE -Albert G. Hill, Jr. Trust, the HLHTE - Albert G. Hill, Jr. Trust, the Lyda Hunt - Margaret Trusts, Albert G. Hill, Jr., and the Albert Hill Trust.  If the Probate Court decides that Hill Jr.'s exercise of these powers of appointment was invalid, then Hill Jr.'s beneficiary designations in his Will would lapse.  By contrast, if the Probate Court decides that Hill Jr. properly exercised these powers of appointment in his Will, thereby lawfully excluding Hill III from any inheritance, Hill III would not qualify as a current beneficiary and the waiver of standing provision in the Settlement Agreement and Final Judgment would, therefore, bar him from seeking relief in the Probate Court or this court with respect

to the trusts at issue.  Under the latter scenario, whether the termination of the trusts during Hill Jr.'s lifetime was impermissible would be moot.

Insofar as the parties seek to present these issues before the undersigned, while also pursuing them in the Probate Court, the court declines this invitation. These disputed matters are *inextricably intertwined* with the probate of Hill Jr.'s Will.

\*\*\*

Until the Probate Court resolves Hill III's request for declaratory relief as to whether Hill Jr. lacked the powers of appointment he sought to exercise in his Will,  the court cannot determine whether Hill III waived his standing under section III(5)(b) of the Settlement Agreement and paragraph 28 of the Final Judgment.

2020 Action, Doc. 1883 at 16, 19 (July 3, 2018 Memorandum Opinion and Order) (original emphasis).

In November 2018, the parties filed competing summary judgment motions in Probate Court No. 2 regarding Hill Jr.'s Powers of Appointment. After the Probate Court had conducted hearings on those motions, Hill III nonsuited his claims without prejudice.

In their current lawsuit, Plaintiffs, once again, assert the same claims that the court denied without prejudice on July 3, 2018, when it deferred to the Probate Court before which identical claims were pending. Plaintiffs allege:

The claims here asserted arise from Defendants' termination of certain trust documents created pursuant to the GSA, identified as the New Hunt Trusts. The parties agreed that these Trusts would be formed out of the trusts H.L. Hunt had created in 1935 for his daughter Margaret (MHTE) and his son Hassie (HHTE). Thus, the New Hunt Trusts were brought into existence by the Final Judgment. The parties agreed that "the rights of each beneficiary of each of the New Hunt Trusts shall be governed by the terms and provisions of the Articles of Agreement and Declaration of Trust establishing the" MHTE and the HHTE.

Pls.' Compl. 2, Doc. 1. Plaintiffs further allege, as they did previously in the 2020 Action:

Preservation of trust assets from the Margaret and Hassie Trusts in the Final Judgment New Hunt Trusts until their termination dates on April 20, 2026[,] and June 14, 2028[,] was a material term and an essential benefit of the bargain to Hill

III when he signed the GSA on May 13, 2010, both for himself and "derivatively on behalf of the MHTE and the HHTE, and as next friends, and on behalf of Albert Galatyn Hill IV, Nance Haroldson Hill and Caroline Margaret Hill."

By dissolving the Final Judgment New Hunt Trusts that had derived from the MHTE and HHTE, prior to the termination dates established by H.L. Hunt, Al Hill, Jr., Lyda Hill, Heather Washburne, and Elisa Summers took possession of Trust assets into their personal estates and beyond the reach of Plaintiffs. The Defendants' conduct breached the implied covenant of good faith and fair dealing that is applicable to all contracts in the State of Texas. These actions were breaches of the GSA that violated the terms of the MHTE and HHTE Trusts as well as the New Hunt Trusts, damaging Plaintiffs.

Pls.' Compl., ¶¶ 73, 74.

Plaintiffs assert the following claims arising out of the 2016 termination and dissolution of the Hill Jr. Trusts and the purported termination and dissolution of the Lyda Hill Trusts: Breach of Contract (Count One) (except as to Defendants Donnally and Tatham); Declaratory Relief (Count Two) (against all Defendants); Imposition of a Constructive Trust/Conversion (Count III) (against all Defendants); Tortious Interference with Contract (against Donnally and Tatham only) (Count IV); Breach of Fiduciary Duties and Fee Disgorgement (against Donnally, Irwin, and Tatham) (Count V); Aiding and Abetting Breach of Fiduciary Duties (against Hill Jr., Lyda Hill, Washburne, and Summers) (Count VI); Civil Conspiracy (against all Defendants) (Count VII); Aiding and Abetting (against Hill Jr., Keliher, Miller, Lyda Hill, Washburne, and Summers) (Count VIII); Unjust Enrichment (against Hill Jr., Lyda Hill, Washburne, and Summers) (Count IX); Equitable Reformation (against all Defendants) (Count X); and Exemplary Damages (against all Defendants). *See* Pls.' Compl., Doc. 1.

Defendants have moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), arguing, among other things, that Plaintiffs lack standing; that Plaintiffs' claims have been settled, released, and adjudicated in the Final Judgment; and that

**Memorandum Opinion and Order – Page 13**

Plaintiffs have taken positions contrary to the positions they espouse in the Complaint when it was to their benefit and are, therefore, estopped from bringing their current claims.

## II.    Legal Standards

### A.  Rule 12(b)(1) - Lack of Subject Matter Jurisdiction

A federal court has subject matter jurisdiction over civil cases "arising under the Constitution, laws, or treaties of the United States," or over civil cases in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and in which diversity of citizenship exists between the parties. 28 U.S.C. §§ 1331, 1332. Federal courts are courts of limited jurisdiction and must have statutory or constitutional power to adjudicate a claim. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) (citations omitted); *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Absent jurisdiction conferred by statute or the Constitution, they lack the power to adjudicate claims and must dismiss an action if subject matter jurisdiction is lacking. *Id.*; *Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994)). A federal court must presume that an action lies outside its limited jurisdiction, and the burden of establishing that the court has subject matter jurisdiction to entertain an action rests with the party asserting jurisdiction. *Kokkonen*, 511 U.S. at 377 (citations omitted). "[S]ubject-matter jurisdiction cannot be created by waiver or consent."  *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001).

In considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, "a court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420,

424 (5th Cir. 2001) (citation omitted). Thus, unlike a Rule 12(b)(6) motion to dismiss for failure to state a claim, the district court is entitled to consider disputed facts as well as undisputed facts in the record and make findings of fact related to the jurisdictional issue. *Clark v. Tarrant Cnty.*, 798 F.2d 736, 741 (5th Cir. 1986). All factual allegations of the complaint, however, must be accepted as true. *Den Norske Stats Oljeselskap As*, 241 F.3d at 424.

### B.  Rule 12(b)(6) - Failure to State a Claim

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted). When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). In this regard, a document that is part of the record but not referred to in a plaintiff's complaint and not attached to a motion to dismiss may not be considered by the court in ruling on a 12(b)(6) motion. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n.9 (5th Cir. 2012) (citation omitted). Further, it is well-established and "'clearly proper in deciding a 12(b)(6) motion [that a court may] take judicial notice of matters of public record.'" *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal

conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Stated another way, when a court deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc). Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge. *Adams*, 556 F.2d at 293.

## III.   Analysis

### A.  Plaintiffs' Motion to Strike and Request to Convert Pending Motions to Dismiss into Motions for Summary Judgment

Before turning to the pending motions to dismiss, the court must address Plaintiffs' Motion to Strike and their associated request that the court convert the pending motions to dismiss into motions for summary judgment. *See* Pls.' Resp. and Mot. Strike 1-5, Doc. 26. Defendants oppose these requests in their respective reply briefs. *See* Hill Jr. Defs.' Reply 10-11, Doc. 31; Lyda Hill's Reply 2-3, Doc. 28. For the reasons that follow, the court denies both Plaintiffs' Motion to Strike and their associated request that the court convert the pending motions to dismiss into motions for summary judgment.

### 1. Motion to Strike

Pursuant to Federal Rule of Civil Procedure 12(f), Plaintiffs move to strike the pending motions to dismiss. In support, they contend that in their motions, Defendants "allude to an array of documents irrelevant to the allegations in Plaintiffs' Complaint." Pls.' Resp. and Mot. Strike 1, Doc. 26. Plaintiffs further argue that both "Motions are replete with the sort of name calling and character assassination that should be excluded from pleadings." *Id.* at 2. Plaintiffs take issue with Defendants' labelling Hill III as a "vexatious litigant" and accuse Defendants of "seeking to avoid the Court's consideration of the specific claims in the Complaint." *Id.*

Lyda Hill opposes Plaintiffs' Motion to Strike and, in her reply brief, she argues:

> Seemingly in a moment of desperation, Plaintiffs' Response seeks to strike Lyda's Motion because of references to Hill III as a "vexatious" litigant. See Response (ECF 26 at 2). But indeed, the "vexatious" label was a term first used by the Court (App. 409 (ECF 21 at 3 (citation omitted)) ("the court has repeatedly admonished Hill III, his wife Erin Hill, and their legal team that it will not hesitate to impose sanctions if these vexatious filings and dilatory tactics continue"), and the term could not be more accurate. It certainly does not provide a basis for striking Lyda's Motion.

Lyda Hill's Reply 2, Doc. 28. The Hill Jr. Defendants, in their reply, maintain the court should deny Plaintiffs' Rule 12(f) motion to strike for the following three reasons: (i) "the filing at issue is a motion, not a pleading"; (ii) "the Motion relates to the controversy before the Court as it specifically addresses Plaintiffs' claims"; and (iii) "Plaintiffs fail to note any specific language in the Motion they contend satisfies Rule 12(f)'s high standard to strike." Hill Jr. Defs.' Reply 10, Doc. 31.

Rule 12(f) motions "are viewed with disfavor" and granted "only when the pleading to be stricken has no possible relation to the controversy." *Securities Exch. Comm'n v. Faulkner*, Civil Action No. 3:16-cv-1735-D, 2019 WL 2515000, at * 1 (N.D. Tex. June 18, 2019) (Fitzwater, J.)

(citation omitted). Although Rule 12(f) authorizes the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," Rule 7(a) identifies the "pleadings" subject to being stricken under Rule 12(f): "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer." *Id.*

Here, as the Hill Jr. Defendants correctly note, the filings at issue are motions, not pleadings. As such, Rule 12(f) does not apply. In addition, the court disagrees with Hill III and concludes that the motions relate to the current controversy and specifically address Plaintiffs' claims. Further, as Lyda Hill points out, the "vexatious" label was a term first used by the court,[10] and, in any event, does not provide a basis for striking her motion. For these reasons, the court **denies** Plaintiffs' Motion to Strike.

---

[10] The court stated in a memorandum opinion and order issued on December 10, 2018:

> After years of litigation, this case was supposed to have been brought to a close on November 8, 2010, by the Final Judgment (Doc. 999), implementing the Settlement Agreement (Doc. 879), as well as a separate judgment in a related attorney's fees dispute severed from the underlying action. Since entry of Final Judgment, Hill III has inundated the court with unsuccessful motions to alter, amend, or vacate the Final Judgment, to recuse various judges for purported bias, and to stay proceedings, many of which have been filed solely to frustrate the court's implementation of the Final Judgment and Settlement Agreement. Hill III and his legal team have also taken numerous unsuccessful appeals to the United States Court of Appeals for the Fifth Circuit resulting in further protraction of this eleven-year-old case. During the eight-year period of postjudgment litigation, *the court has repeatedly admonished Hill III, his wife Erin Hill, and their legal team that it will not hesitate to impose sanctions if these vexatious filings and dilatory tactics continue.*

Mem. Op. and Order 12, Doc. 1920 (emphasis added).

**Memorandum Opinion and Order – Page 19**

2.  *Plaintiffs' Request to Convert Pending Motions to Dismiss into Motions for Summary Judgment*

Plaintiffs contend that because Defendants' respective motions improperly make factual assertions that exist outside the pleadings and rely on matters outside the pleadings, the court must convert their motions to dismiss into motions for summary judgment. *See* Pls.' Resp. and Mot. Strike 3, Doc. 26. According to Plaintiffs:

> Here, Defendants have attached 37 exhibits, totaling 888 pages, to their Motions to Dismiss. Only three of the exhibits Defendants attached are relevant and incorporated within Plaintiffs' Complaint: the GSA, the Final Judgment, and the Exhibits to the Final Judgment. A fourth exhibit, the July 3, 2018 Order by Judge Lindsay, is also clearly relevant and can be noticed by the Court. All other matters are extrinsic documents that this Court should not consider under Rule 12(b)(6). Because Defendants have attached nearly 900 pages of extrinsic documents to their Motions to Dismiss, the motions must be converted to motions for summary judgment under Rule 56.

*Id.*

The Hill Jr. Defendants and Lyda Hill oppose Plaintiffs' request. Among other thigs, the Hill Jr. Defendants contend that, insofar as they are moving to dismiss under Rule 12(b)(1) for lack of standing, Rule 12(d) does not authorize the court to convert their motion to a motion for summary judgment. Hill Jr. Defs.' Reply 10-11, Doc. 31. They further argue that "attaching or referring to documents alone is not a sufficient basis to convert a motion to dismiss into a summary-judgment motion under Rule 56." *Id.* at 11. In her motion to dismiss, Lyda Hill notes that "Plaintiffs' Complaint is replete with references to the underlying settled federal and state court litigation . . . and over a hundred references to the Settlement Agreement and Final Judgment in the 2020 Action, which are central to this suit." Lyda Hill's Mot. Dismiss 17, Doc. 21. She requests that the court, in considering her motion, "take judicial notice of documents from the 2020 Action and the other underlying settled litigation." *Id.* at 18. In her reply brief, Lyda Hill asserts

that, in ruling on her motion to dismiss, the court "is entitled to consider its own prior rulings on Plaintiffs' numerous baseless post-judgment filings." Lyda Hill's Reply 2 note 1, Doc. 28. For the reasons that follow, the court will deny Plaintiffs' request.

First, Rule 12(d) authorizes conversion of a Rule 12(b)(6) motion to dismiss for failure to state a claim, or a Rule 12(c) motion for judgment on the pleadings, into a motion for summary judgment. *See* Fed. R. Civ. P. 12(f). It does not, however, authorize conversion of a Rule 12(b)(1) motion to dismiss for lack of jurisdiction into a motion for summary judgment. Thus, the court denies Plaintiffs' request to convert the pending Rule 12(b)(1) motions into summary judgment motions.

The court also rejects Plaintiffs' request that the court convert the pending Rule 12(b)(6) motions to dismiss into summary judgment motions. As previously explained by the court in its legal standards, *see supra* Sec. II, in ruling on such a Rule 12(b)(6) motion to dismiss, the court cannot look beyond the pleadings.  *Spivey*, 197 F.3d at 774. The pleadings include the complaint and any documents attached to it. *Collins*, 224 F.3d at 498-99. Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp.*, 987 F.2d at 431). It is well-established and "'clearly proper in deciding a 12(b)(6) motion [that a court may] take judicial notice of matters of public record.'" *Funk*, 631 F.3d at 783 (quoting *Norris*, 500 F.3d at 461 n.9) (citation omitted); *see also Cinel*, 15 F.3d at 1341, 1343 n.6 (court may consider matters of public record, including a consent judgment, in deciding a Rule 12(b)(6) motion).

Here, the court intends to follow its legal standard and consider the Complaint, documents Plaintiffs attach to their Complaint, and documents that Defendants attach to their respective

motions to dismiss if they are referred to in Plaintiffs' Complaint and are central to their claims. The court will also take judicial notice of matters of public record. Finally, the court is entitled to consider its own prior rulings and any and all rulings in the 2020 Action that are relevant to this lawsuit. As the court will not consider any other documents in ruling on the pending Rule 12(b)(6) motions, the court **denies** Plaintiffs' request that the court convert the pending Rule 12(b)(6) motions to dismiss into summary judgment motions.

### B.  Rule 12(b)(1) Motions to Dismiss

The Hill Jr. Defendants contend that Plaintiffs lack standing to challenge the dissolution of the Hill Jr. Trusts under the Waiver of Standing clause. They further argue that the issue of whether the dissolution of Hill Jr.'s Trusts was improper is moot. Lyda Hill makes similar arguments pertaining to the Lyda Hill trusts.[11] Because the Hill Jr. Defendants and Lyda Hill each incorporated the other's briefing by reference, the court will consider the motions in tandem. Hill III opposes the motions. As Erin Hill does not contest that she lacks standing, the court **grants** the Rule 12(b)(1) motion to dismiss as to Erin Hill's claims.

"Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Id.* (citations omitted). "The law of Article III standing, which is built on separation-of-powers

---

[11] In her reply brief, Lyda Hill notes that Plaintiffs "mischaracterize a Probate Court order described" in her motion. Lyda Hill's Reply 6, Doc. 28. She states: "This June 2011 Probate Court order permitted the trustees of Lyda's separate trusts to voluntarily terminate the trusts – It did not order the termination of the trusts at the time as Plaintiffs misleadingly contend." *Id.* As this order is referenced in the Complaint and attached to Lyda Hill's motion to dismiss and central to Plaintiffs' claims against her, the court has considered it and agrees that Plaintiffs have mischaracterized the order as terminating the Lyda Hill Trusts. *See* Lyda Hill's Unsealed Appendix, Doc. 22 at 662-64.

principles, serves to prevent the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). "The party invoking federal jurisdiction bears the burden of establishing" that he, she, or it has standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Constitutional standing is assessed at the time a plaintiff commences an action. *Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 460 (5th Cir. 2005).

To satisfy the "irreducible constitutional minimum" of standing under Article III, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338 (quoting *Lujan*, 504 U.S. at 560).[12]

The doctrine of mootness is embedded in Article III's case or controversy requirement and requires that an actual, ongoing controversy exist at all stages of federal court proceedings. *See Burke v. Barnes*, 479 U.S. 361, 363 (1987). A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome" of the litigation. *Powell v. McCormack*, 395 U.S. 486, 496 (1969). Thus, if events after a case is filed resolve the parties' dispute, the case must be dismissed as moot because federal courts do not have the constitutional authority to decide moot cases. *Carr v. Saucier*, 582 F.2d 14, 15 (5th Cir. 1978). Mootness may be raised "by any party at any time" because, if the controversy is moot, federal courts lack subject matter jurisdiction. *Id.*

---

[12] Statutory standing, also commonly referred to as prudential standing, is similar to constitutional standing and addresses whether a plaintiff is "within the class of plaintiffs whom Congress has authorized to sue" under a statute. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014). Although often treated as "effectively jurisdictional," statutory standing relates to the merits of a cause of action and not subject matter jurisdiction." *Id.* Defendants are arguing that Plaintiffs lacked constitutional standing when they commenced this action. They do not address statutory or prudential standing.

**Memorandum Opinion and Order – Page 23**

Although Defendants do not specify, the court concludes this case primarily concerns injury in fact, the "[f]irst and foremost" of standing's three elements. *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 103 (1998). To establish injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560.

As the undersigned previously ruled, Hill III's failure in the Probate Court to disprove the validity of Hill Jr.'s powers of appointment bars him as a matter of law from seeking relief regarding dissolution of the Hill Jr. Trusts due to the Waiver of Standing Clause:

> Pending before the Probate Court is Hill III's request for a declaratory judgment that Hill Jr. lacked the powers of appointment he sought to exercise in his Will with respect to the MHTE -Albert G. Hill, Jr. Trust, the HLHTE - Albert G. Hill, Jr. Trust, the Lyda Hunt - Margaret Trusts, Albert G. Hill, Jr., and the Albert Hill Trust.  If the Probate Court decides that Hill Jr.'s exercise of these powers of appointment was invalid, then Hill Jr.'s beneficiary designations in his Will would lapse.  By contrast, if the Probate Court decides that Hill Jr. properly exercised these powers of appointment in his Will, thereby lawfully excluding Hill III from any inheritance, Hill III would not qualify as a current beneficiary and the waiver of standing provision in the Settlement Agreement and Final Judgment would, therefore, bar him from seeking relief in the Probate Court or this court with respect to the trusts at issue.  Under the latter scenario, whether the termination of the trusts during Hill Jr.'s lifetime was impermissible would be moot.

2020 Action, Doc. 1883 at 16 (July 3, 2018 Memorandum Opinion and Order).

Once Hill Jr. executed his Will in 2014 dictating that, upon his death, his powers of appointment over his equitable interests in the Hill Jr. Trusts would be exercised to exclude Hill III, irrespective of whether the Hill Jr. Trusts were dissolved in 2016, Hill III would never become a current beneficiary and any relief granted that results in money being returned to the Hill Jr. Trusts will not inure to Plaintiffs' benefit. In his Will, Hill Jr. exercised his Powers of Appointment over his equitable interests in the Hill Jr. Trusts not in favor of Hill III. Under such circumstances,

as the court recognized, for Hill III to acquire the status of a current beneficiary of the Hill Jr. Trusts, he would need to first prove that Hill Jr. lacked those powers of appointment.

This he does not do. Hill III dropped his challenge to the powers of appointment in Probate Court, and he alleges no such challenges in the Complaint. Accordingly, he is not now, nor will he ever be, a current beneficiary of the Hill Jr. Trusts, and the Waiver of Standing provision in the GSA and Final Judgment, therefore, bars him from seeking relief in this court with respect to the trusts at issue.  Accordingly, Hill III has no standing, or any viable basis, for pursuing the claims in the Complaint.[13]

Separately, the court concludes that Hill III lacks standing to assert any claims against Lyda Hill related to the HHTE because he released these claims in open court as part of the settlement. In the GSA, and as confirmed by the Final Judgment, Hill III covenanted not to reassert any released claims against Lyda Hill. 2020 Action, Doc. 879 at 21, ¶5(a) and Doc. 999 at 43, ¶45. In accordance with the GSA, the Final Judgment dismissed the released claims with prejudice. 2020 Action, Doc. 999 39, ¶ 36. During the May 5, 2010 hearing before Magistrate Judge Paul D. Stickney in which the parties' settlement was announced, Lyda Hill's counsel anticipated the

---

[13] Although not addressed in the Complaint, Plaintiffs attempt to raise the issue in their response brief of whether Hill Jr. had the powers of appointment he exercised in his Will. The law is clear in this Circuit that claims that are not properly raised in the complaint, but only in response to a dispositive motion, are not properly before the court. *See, e.g., Cutrera v. Board of Sup'rs of Louisiana State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005). When a plaintiff raises an argument for the first time in response to a dispositive motion, the court may consider those claims and arguments as a motion to amend under Federal Rule of Civil Procedure 15(a). District courts "should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), but they have discretion to grant or deny that leave "and may consider a variety of factors including undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ..., and futility of the amendment." *Marucci Sports, L.L.C. v. National Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014). Here, Plaintiffs have not sought to satisfy any of these factors, and the court concludes that none of the factors weighs in favor of allowing Plaintiffs to amend their Complaint. The court views Plaintiffs' Complaint in this action as a not-so-thinly-veiled attempt to circumvent the GSA, the Final Judgment. and the court's rulings. Leave of court to amend should not be allowed for a party to act in bad faith, cause undue delay, or pursue amendments that are futile.

claims Plaintiffs are attempting to relitigate in this action. The court and counsel for Hill III (Ms. Aldous) specifically confirmed on the record to Lyda Hill's counsel (Mr. Ikard) that claims relating to the power of appointment and the words "per stirpes" giving Plaintiffs any interest in Lyda Hill's HHTE trust were released and would be dismissed with prejudice. 2020 Action, Doc. 877 (May 5, 2010 hearing transcript at 33-34). Thus, as Hill III released these claims, he lacks standing to raise them in this civil action.

For these reasons, the court **grants** Defendants' respective Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction. Plaintiffs' claims will be **dismissed with prejudice**. Although the court lacks subject matter jurisdiction over Plaintiffs' claims and dismissals for lack of jurisdiction are ordinarily without prejudice,[14] and in light of this court's ruling, there is no court, state or federal, that has jurisdiction to hear Plaintiffs' claims. Plaintiffs cannot amend to overcome this obstacle. Plaintiffs themselves state in their Response at heading "F": "**The Parties Agreed that this Action Must be Brought in this Court**." Pls.' Resp. 12, Doc. 26 (original emphasis). They also assert, "because this action arises after May 14, 2010 [the date of the GSA], arises out of the GSA, and involves implementation and enforcement of the GSA and the Final Judgment, it is properly and necessarily brought here." *Id.* Moreover, to dismiss Plaintiffs' claims without prejudice would create the impression that they could file these claims in an appropriate

---

[14] Dismissal for lack of subject matter jurisdiction or standing is usually without prejudice, while dismissal for failure to state a claim is with prejudice. *Sepulvado v. Louisiana Bd. of Pardons & Parole*, 114 F. App'x 620, 622 (5th Cir. 2004) (citation omitted). There are instances, however, when a dismissal for lack of standing may be with prejudice. *See, e.g., Baton Rouge Building & Constr. Trades Council AFL-CIO v. Jacobs Constructors, Inc*., 804 F.2d 879, 881 (5th Cir. 1986) (affirming district court's dismissal with prejudice based on lack of standing); *Westfall v. Miller*, 77 F.3d 868, 871 (5th Cir. 1996) (same).

**Memorandum Opinion and Order – Page 26**

forum when there is no other appropriate forum. The better, and more reasonable, course of action, therefore, is to dismiss these claims with prejudice.

### C. Rule 12(b)(6) Motions to Dismiss Based on Estoppel

As the court has granted dismissal under Rule 12(b)(1), it need not consider the remaining arguments in support of the pending motions to dismiss. In the event, however, that the appellate court holds that Plaintiffs have standing, the court addresses certain aspects of the pending motions to dismiss based on Rule 12(b)(6), specifically Defendants' respective arguments that Plaintiffs are estopped from asserting their claims.

#### 1. Dismissal Based on Quasi-Estoppel (or Estoppel by Contract)

The Hill Jr. Defendants contend that Hill III is estopped from contending Hill Jr. does not have powers of appointment in the Hill Jr. Trusts. Hill Jr. Defs.' Reply 7, Doc. 31. Under the doctrine of quasi-estoppel (or estoppel by contract), they contend "it is prejudicial to Defendants and inequitable for Hill III to contend today (after receiving a nine-figure monetary amount in consideration through the GSA and Final Judgment) that Hill Jr. did not have powers of appointment in the Hill Jr. Trusts while previously having agreed to, and benefitting from, the GSA to which Hill Jr.'s Disclaimer is attached." *Id.* The court agrees.

Under Texas law, quasi-estoppel "precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken. The doctrine applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit." *Hartford Fire Ins. Co. v. City of Mont Belvieu, Tex.*, 611 F.3d 289, 298 (5th Cir. 2010) (citation omitted); *see also Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008) ("Estoppel . . . generally prevents one party from misleading another to the other's detriment or to the misleading party's own benefit.")

(citations omitted). Quasi-estoppel forbids a party from accepting the benefits of a transaction and then subsequently taking an inconsistent position to avoid corresponding obligations or effects. *Eckland Consultants, Inc. v. Ryder, Stilwell Inc.*, 176 S.W.3d 80, 87 (Tex. App.—Houston [1st Dist.] 2004, no pet.). A party need not show a false representation or detrimental reliance to prove quasi-estoppel. *Steubner Realty 19, Ltd. v. Cravens Rd. 88, Ltd.*, 817 S.W.2d 160, 164 (Tex. App.—Houston [14th Dist.] 1991, no writ).

One form of quasi-estoppel, estoppel by contract, is based on the idea that a party to a contract cannot, to the prejudice of another, take a position inconsistent with the contract's provisions. *Freezia v. IS Storage Venture, LLC*, 474 S.W.3d 379, 387-88 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (citing *Zieben v. Platt*, 786 S.W.2d 797, 802 (Tex. App.—Houston [14th Dist.] 1990, no writ)). Estoppel by contract binds a party to the terms of his or her own contract, unless the contract is void, annulled, or set aside in some way. *Ohrt v. Union Gas Corp.*, 398 S.W.3d 315, 329 (Tex. App.—Corpus Christi 2012, pet. denied); *Royalco Oil & Gas Corp. v. Stockhome Trading Corp.*, 361 S.W.3d 725, 732 (Tex. App.—Fort Worth 2012, no pet.). Estoppel by contract precludes a party to a valid instrument from denying the truth of the recitals in the instrument. *Masgas v. Anderson*, 310 S.W.3d 567, 571 (Tex. App.—Eastland 2010, pet. denied).

As previously explained, Hill III contractually agreed in the GSA, which was incorporated into the Final Judgment, that Hill Jr.'s Disclaimer was valid and enforceable. The 2005 Disclaimer expressly recognized Hill Jr.'s power of appointment in the MHTE over both his income trust and his termination trust, as follows:

> If MHH [Margaret Hunt Hill] does not exercise her general power of appointment, each intestate heir of MHH will also possess under Article III, Section 3 of the Trust Agreement a general power of appointment allowing such heir to appoint his or her Income Interest or Termination Interest in the Trust, or both, to someone else.

2020 Action, Doc. 879 at 38, ¶ 7; Doc. 999-1 at 6, ¶ 7. The Disclaimer also provided:

> The Disclaiming Beneficiary is not renouncing or disclaiming any interest in the Trust besides the Disclaimed Interests. Thus, the Disclaiming Beneficiary is retaining all interests in the Trust other than the Disclaimed Interests (including, without limitation, the Beneficiary's ***power of appointment*** over such retained interests).

2020 Action, Doc. 879 at 40; Doc. 999-1 at 8. Accordingly, Hill III agreed in the GSA that Hill Jr. had powers of appointment in the MHTE. By extension, as the Hill Jr. Defendants argue, Hill III also agreed Hill Jr. had powers of appointment in the HHTE, which has identical language to the MHTE.[15] Therefore, by extension, Hill III agreed Hill Jr. had powers of appointment in the Hill Jr. Trusts, which are derived from the MHTE and HHTE. Because Hill Jr. held powers of appointment over, and disclaimed portions of his Income Interest and Termination Interest in the MHTE, Hill III received both a vested interest in the income and the corpus of the MHTE. The Final Judgment split Hill III's interests out from the MHTE into separate trusts, which are also separate and distinct from the Hill Jr. Trusts. Otherwise stated, through Hill Jr. disclaiming his power of appointment that Hill III now contends could not be disturbed until 2028, the Disclaimer, and in turn the GSA and the Final Judgment, provided Hill III with a portion of the corpus of the MHTE.

---

[15] Hill III previously argued to Dallas County Probate Court No. 2 in In re Estate of Haroldson L. Hunt, Jr., Deceased, Cause No. PR-08-830-2 (the "HHTE Probate Suit"), that in his Will, "Hassie Hunt exercised his general power of appointment under the HHTE to an on behalf of the lineal descendants of [his] sister, Margaret Hunt Hill, per stirpes." Lyda Hill's App., Doc. 22 at 521 (internal quotations omitted) (Hill III's Original Petition for Construction of Last Will and Testament). Otherwise stated, in the HHTE Probate Suit, in 2008, Hill III acknowledged that the trust instrument for the HHTE, which is the same as the trust instrument for the MHTE, provided the beneficiary (Hassie) with powers of appointment. *Id.* It is clear that Plaintiffs seek to benefit from Hassie having exercised the same power of appointment they now argue that Hill Jr. did not possess when he exercised his power of appointment in his 2014 Will. But for Hassie's powers of appointment, Hassie's interest in the HHTE would have passed to Hassie's then living siblings and/or the descendants of his pre-deceased siblings, rather than to only Margaret Hunt Hill's lineal descendants upon Hassie's death.

**Memorandum Opinion and Order – Page 29**

For these reasons, in the alternative to dismissing Plaintiffs' claims against the Hill Jr. Defendants and Lyda Hill for lack of subject matter jurisdiction, the court will dismiss their claims pursuant to Federal Rule of Civil Procedure 12(b)(6), as Plaintiffs are estopped under the doctrine of quasi-estoppel (or estoppel by contract) from asserting their claims as set forth in the Complaint.

### 2. *Lyda Hill's Motion to Dismiss Based on Judicial Estoppel*

Lyda Hill contends that Plaintiffs are judicially estopped from asserting that she, as the current beneficiary of the Lyda Hill trusts, lacks powers of appointment to do what she wishes with the Lyda Hill Trusts, including were she to choose to dissolve the trusts. For the reasons that follow, the court concludes that, in the alternative to dismissing Plaintiffs' claims against her for lack of standing, Plaintiffs are judicially estopped from asserting their claims against Lyda Hill and their claims will be dismissed under Rule 12(b)(6).

After entry of the GSA, and in connection with discussing options for preserving Hill III's remainder interest in his new separate MHTE trust for his children, he supported an asset protection trust alternative in which he would have had the power to direct disposition of the trust assets through the power of appointment that is given to the "Beneficiary" under the MHTE trust. *See* 2020 Action, Doc. 936 at 5-6. Likewise, Erin Hill favored the asset protection trust alternative alone rather than coupling that approach with the purchase of a life insurance policy with their children as beneficiaries, objecting that Hill III essentially would lose his independent appointment power and he would have to pay to assure that loss, making him the only trust beneficiary paying for the right to forgo a power. *See* 2020 Action, Doc. 945 at 6-7. As Lyda Hill correctly argues, "[b]y these action, post-settlement, Hill III and Erin Hill confirmed that a 'Beneficiary' of the trusts has the very same power of appointment they now challenge with respect to the dissolution

**Memorandum Opinion and Order – Page 30**

claims they bring in this lawsuit against the Hill Jr. Defendants and Lyda Hill." Lyda Hill's Mot. Dismiss 15, Doc. 21.

On this record, the court agrees with Lyda Hill that the doctrine of judicial estoppel bars Hill III and Erin Hill from now taking the inconsistent position that Hill Jr. and Lyda Hill do not have a power of appointment, a *sine qua non* to Plaintiffs' claims challenging Lyda Hill's ability to dissolve her separate trusts, should she wish to do so. "Judicial estoppel has three elements: (1) The party against whom it is sought has asserted a legal position that is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently." *Allen v. C & H Distributors, L.L.C.*, 813 F.3d 566, 572 (5th Cir. 2015) (citation omitted). The elements of judicial estoppel are satisfied here: (1) Hill III and Erin previously admitted that the trust beneficiaries have a power of appointment when it suited Plaintiffs' interests to avoid purchasing a life insurance policy (*see supra*); (2) Judge O'Connor relied on their prior position in not requiring the purchase of such a policy (*see* 2020 Action, Doc. 999 at 27-28, ¶ 18); and (3) there was no inadvertence in Plaintiffs' prior positions (*see supra*).

In *United States ex rel. Long v. GSD&M Idea City, LLC*, 798 F.3d 265, 274 (5th Cir. 2015), the Fifth Circuit stated, "[W]e have not hesitated to apply judicial estoppel to dismiss claims under Rules 12(b)(6) or 12(c)" while affirming dismissal of claims based on judicial estoppel. For these reasons, in the alternative to dismissing Plaintiffs' claims against Lyda Hill for lack of subject matter jurisdiction, the court will dismiss their claims pursuant to Federal Rule of Civil Procedure 12(b)(6), as Plaintiffs are judicially estopped from asserting their claims herein against Lyda Hill.[16]

---

[16] The court, at this time, denies without prejudice Lyda Hill's request for sanctions. If she desires to seek sanctions or attorney's fees, she should file a formal motion and brief in accordance with Federal Rule of Civil Procedure 54(d)(2).

**IV.     Amendment of Pleadings**

In response to the pending motions to dismiss, Plaintiffs do not request to amend their pleadings in the event the court dismisses their claims pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction or Rule 12(b)(6) for failure to state a claim. The provision of Rule 15(a)(2) of the Federal Rules of Civil Procedure that states "[t]he court should freely give leave when justice so requires" is not without limitation. The decision to allow amendment of a party's pleadings is within the sound discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994) (citation omitted). In determining whether to allow an amendment of the pleadings, a court considers the following: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman*, 371 U.S. at 182; *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003) (citation omitted).

Here, even were Plaintiffs to seek leave to amend, the above-listed factors would cause the court to deny the request. First, given the unique procedural history of this matter, which concluded in 2010 when Judge O'Connor issued the Final Judgment, the court can only conclude that Plaintiffs are proceeding in bad faith and allowing further amendment would be unduly prejudicial to Defendants, who have had to respond to these same contentions in multiple fora over a period of several years. In addition, in light of the court's determination that Plaintiffs are estopped from bringing their claims, either under a theory of judicial estoppel or quasi-judicial estoppel, any amendment would be futile. Accordingly, the court declines to allow Plaintiffs to amend their pleadings, and their claims will be **dismissed with prejudice**.

V.      **Conclusion**

This lawsuit filed by Hill III and Erin Hill—the latest chapter in this "protracted and complicated" litigation, *Hill*, 953 F.3d at 301 (citation and internal punctuation omitted)—brings to mind the oft-quoted words of Yogi Berra, "It's like déjà vu all over again." Nate Scott, *The 50 Greatest Yogi Berra Quotes*, USA Today (March 28, 2019), https://ftw.usatoday.com/2019/03/the-50-greatest-yogi-berra-quotes (last visited March 24, 2022). "Déjà vu" is defined as, among other things, "a feeling one has seen or heard something before," and as "something overly or unpleasantly familiar." Merriam–Webster's Collegiate Dictionary 329 (11th ed. 2004). Hill III's incessant litigation and filings in this court following the entry of the Final Judgment by Judge O'Connor on December 8, 2010, and on appeal before the Fifth Circuit, which has "weighed in on the settlement" five different times, *Hill*, 953 F.3d at 302, evoke what can only be described as déjà vu. This latest chapter, however, is the last chapter. As recognized by the Fifth Circuit in 2014, litigation involving the management and beneficiaries of the MHTE and HHTE "has been protracted, complicated, and, most importantly, settled with a Global Settlement and Mutual Release Agreement (the "settlement") implemented by a final judgment from the district court." *Hill v. Schilling*, 593 F. App'x 330, 331 (5th Cir. 2014). Moreover, no reasonable person would have contemplated that Hill III related litigation that was settled by the GSA and Final Judgment in 2010 would be occurring almost 12 years later. As far as the undersigned is concerned, Hill III and his covey of attorneys are making a mockery of and abusing the judicial process; and it is high time for the court to address this repeated conduct. Not one time has the Fifth Circuit ruled in favor of Hill III on any of his five appeals.

The court does not intend to consider any other matter arising out of the GSA, the Final Judgment, the MHTE, or the HHTE, except for what is pending in the 2020 Action. Moreover, the

**Memorandum Opinion and Order – Page 33**

court is seriously considering whether to impose substantial monetary sanctions against Hill III for being a vexatious litigator and abusing the judicial process. The court is also seriously considering imposing sanctions on Hill III's attorneys pursuant to 28 U.S.C. § 1927.

Based on the foregoing, the court **grants** Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b) (Doc. 18); **grants** Motion to Dismiss and Supporting Brief of Defendant Lyda Hill (Doc. 21); and **denies** Plaintiffs' Motion to Strike (Doc. 26) and Plaintiffs' request that the court convert the pending motions to dismiss into summary judgment motions (Doc. 26). In light of its rulings herein, the court need not address any other argument made by the parties. Plaintiffs' Complaint and this action are hereby **dismissed with prejudice**. In accordance with Federal Rule of Civil Procedure 58(a), the court will issue a final judgment in favor of Defendants by a separate document.

**It is so ordered** this 25th day of March, 2022.

Sam A. Lindsay
United States District Judge

**Memorandum Opinion and Order – Page 34**